MINNIE REINER MINC, Respondent, *v.* THE CHASE NATIONAL BANK OF THE CITY OF NEW YORK, Appellant, Impleaded with JULES SALMANOWITZ and Others, Respondents.

First Department, December 12, 1941.

*Thomas A. Ryan* of counsel [*Daniel G. Tenney, Jr.*, with him on the brief; *Milbank, Tweed & Hope*, attorneys], for the appellant.

*Ward R. Burns* of counsel [*Halpin & Roudin*, attorneys], for the plaintiff-respondent.

No appearance for the defendants-respondents.

CALLAHAN, J. On December 31, 1929, the plaintiff (then known as Minnie Reiner) executed as grantor an indenture conveying certain personal property to The Equitable Trust Company (predecessor of defendant, The Chase National Bank of the City of New York), as trustee, and to two other persons as cotrustees. The trust agreement provided that the income from the property was to be paid to the grantor during her lifetime; and upon her death the trustee was to convey the principal according to the direction in the last will and testament of the grantor, or, if she failed to dispose of the principal and accrued income by will, to convey the same in

such amounts and to such of her next of kin and heirs at law as might be entitled thereto "under the Statutes of Descent and Distribution of the State of New York."

The trust expressly provided that it was to be irrevocable except as to so much of the principal as exceeded the value of $50,000. As to such excess, either of the cotrustees had the power, with the written consent of the grantor, to modify or revoke the trust. The grantor agreed to execute all further instruments necessary to vest the trustee with full title to the property transferred. No control over investments was retained by the grantor. The grantor did not reserve any right to grant or assign the trust property.

After the execution of the trust indenture grantor married Sola Minc.

The grantor's parents are dead and she has no children or other issue living.

On February 4, 1939, grantor served notice on the defendants of her revocation of the entire trust, under section 23 of the Personal Property Law. That notice was accompanied by the consent of her husband. The defendant bank has refused to recognize the revocation, on the ground that all persons who are beneficially interested in the trust have not consented thereto. This action was then brought to compel the revocation thereof.

The sole question involved is whether sufficient consents have been presented. This depends on whether the trust indenture created a remainder in those persons who at the time of grantor's death would be her next of kin or heirs at law under the Statutes of Descent and Distribution of the State of New York, or whether she retained a reversion in herself.

Special Term granted the application of the grantor for judgment revoking the trust, ruling that the only consent necessary to the revocation was that of her husband, because he was her only presumptive next of kin at present.

We think this ruling was error and that a remainder interest has been created in those who would be the next of kin of the grantor at the time of her death, and that this interest may not be wiped out without the consents of such persons. (*Whittemore* v. *Equitable Trust Co.*, 250 N. Y. 298; *Schoellkopf* v. *Marine Trust Co.*, 267 id. 358; *Engel* v. *Guaranty Trust Co.*, 280 id. 43; *Hopkins* v. *Bank of New York*, 261 App. Div. 465.)

In *Engel* v. *Guaranty Trust Co.* (*supra*) the Court of Appeals said (at p. 47): " It is true that our opinion in the *Whittemore* case assumed that transfers of personal property are embraced by the ancient rule ' that a reservation to the heirs of the grantor is equivalent to the reservation of a reversion to the grantor himself.'

(*Doctor* v. *Hughes*, 225 N. Y. 305, 310.) But this rule (as the *Doctor* and *Whittemore* cases show) is with us no more than a *prima facie* precept of construction which may serve to point the intent of the author, when the interpretation of a writing like this trust agreement is not otherwise plain. Inasmuch as for us that rule has now no other effect, it must give place to a sufficient expression by a grantor of his purpose to make a gift of a remainder to those who will be his distributees. We find in the present instance an adequate disclosure by the trust agreement of a purpose in the mind of this grantor to vest his presumptive heirs with rights which it would be beyond his power to defeat, except by testamentary provision."

Likewise, in the present case, examination of the trust agreement adequately discloses the purpose in the mind of the grantor to vest her presumptive heirs with rights which it would be beyond her power to defeat, except by testamentary disposition, at least as to the principal of the trust up to the sum of $50,000. We think this intention is disclosed by the following significant elements: (1) It was specified that the trust was irrevocable, except that the grantor with the consent of either of the cotrustees might withdraw the principal in excess of $50,000. (2) The grantor directed conveyance, in default of her appointment by will, to her next of kin and heirs at law according to the " Statutes of Descent and Distribution of the State of New York." In this case, as distinguished from the *Hopkins* case (*supra*), the grantor was domiciled in the State of New York. Nevertheless, the limitation of the remaindermen to a class recognized as next of kin under the laws of a particular State would indicate a gift by purchase rather than an intent to have the distributees mentioned take by descent. This is demonstrated when we consider that while the grantor at the time of her death might be domiciled elsewhere, nevertheless, those who were her distributees under the Laws of New York would take. (3) The grantor did not reserve any right to assign the trust property during her lifetime. (4) The grantor retained no control over the investment of her securities. (5) She reserved only testamentary control over the disposition of the trust principal.

We think the trust agreement considered as a whole demonstrates the intention of the grantor to finally dispose of all interest in the property and to create a remainder. The consent, therefore, of grantor's husband, though he would be the next of kin at the time of the attempted revocation, was insufficient. (*Schoellkopf* v. *Marine Trust Co.*, *supra*.) " All who might by survival or other event become members of the class entitled to the remainder at the time of the settlor's death have a beneficial interest in the

trust * * *; and this interest may not be destroyed without the consent of these persons." (*Hopkins* v. *Bank of New York, supra,* at p. 468.)

For the reasons indicated, we are required to reverse the judgment, with costs, and to dismiss the complaint, with costs.

MARTIN, P. J., GLENNON, UNTERMYER and COHN, JJ., concur.

Judgment unanimously reversed, with costs, and the complaint dismissed, with costs. Settle order on notice, reversing the findings inconsistent with this determination and making such new findings of fact proved on the trial as are necessary to sustain the judgment hereby awarded.