ESTATE OF EDWARD E. BRADLEY, DECEASED, THE WASHINGTON TRUST COMPANY, EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 109069.  Promulgated February 2, 1943.

*Charles Wells Gross, Esq.*, for the petitioner.
*Davis Haskin, Esq.*, for the respondent.

OPINION.

ARUNDELL, *Judge:* The Commissioner determined a deficiency of $63,244.44 in estate tax. Minor adjustments are not disputed. The issue is whether the value of the corpora of two irrevocable trusts created by decedent prior to 1931 should be included within his gross estate. This turns primarily upon whether the transfers were intended to take effect in possession or enjoyment at or after decedent's death by reason of his reservation of the right to designate who should receive the income during his life, though decedent was precluded from designating himself under one of the trusts. The facts are stipulated or admitted in the pleadings.

The decedent, a resident of Stonington, Connecticut, died September 19, 1938, at the age of almost 81. The estate tax return was filed with the collector for the district of Connecticut.

The first trust was created December 11, 1923, by an irrevocable transfer of property from decedent to a trust company. The trust indenture directed the trustee to pay the net income quarterly *during decedent's lifetime* "to such persons as I [decedent] may designate," any income not so designated and paid to be added to corpus. Upon decedent's death his wife was to receive so much of the income as she should request during the remainder of her life; and thereafter, or upon decedent's death if his wife predeceased him, the income was to be paid to decedent's children in equal shares. The share of any deceased child was to be paid to his or her issue, if any; otherwise to the surviving children or their issue. The trust was to terminate upon the death of the survivor of decedent, his wife, and their three children, and upon such termination the corpus was to be distributed free of trust "to the children or offspring of my children, per capita * * *." By an instrument executed October 30, 1930, decedent modified the trust by excluding himself from those whom he might designate to receive the income during his lifetime. The value of the corpus of this trust at the date of death was $142,650.69.

The other trust was created September 30, 1929, by an irrevocable transfer of property from decedent to the same trust company. The trust indenture directed the trustee to pay the net income quarterly during decedent's lifetime to decedent or such other person or persons as he might designate, any income not so designated and paid to be added to corpus. Upon his death the trustee was to set aside the following sums: $100,000, the income from which was to be paid to decedent's second wife, Mildred, during her lifetime; $15,000, the income from which was to be paid to decedent's daughter-in-law, Adeline M.

Bradley, during her lifetime; and $10,000 and $7,000, the respective incomes from which were to be paid to two employees of decedent during their respective lifetimes. The balance of the corpus upon decedent's death, excluding $5,000 to be paid to the Connecticut Baptist Convention, was to be distributed free of trust to decedent's daughters, Annie B. Brown and Vera B. Findlay. Similarly, upon the termination of each of the four life estates specified above, the sums so set aside were to be paid free of trust to Annie B. Brown and Vera B. Findlay. The share of either daughter, if she were deceased at the time of any distribution of corpus, was to pass to her issue, if any; otherwise to the surviving daughter or her issue. In default thereof the corpus in each instance was to be distributed to decedent's heirs-at-law and next of kin according to the Connecticut statutes of descent and distribution. By an instrument executed March 12, 1931, decedent modified this trust in a particular not here important. The value at the date of decedent's death of the property transferred to this trust on September 30, 1929, was $243,123.49.

Neither of the trusts was created by decedent in contemplation of death.

Decedent and his first wife, Lois, had three children, Annie B. Brown, Vera B. Findlay, both of whom were living at the death of decedent, and a son, Eugene, who died in 1919. Decedent's first wife, Lois, died October 5, 1925, and on September 20, 1926, decedent married Mildred G. Bradley, who was born June 16, 1897.

Eugene had two children, born in 1916 and 1919, both of whom are now living. Annie B. Brown has two children now living, one born in 1908, who has four children now living, and the other born in 1914, who has one child now living. Vera B. Findlay has three children now living, one born in 1915 (who has one child now living), one born in 1922, and the other in 1929.

Respondent defends his inclusion of the trust corpora in decedent's gross estate upon four distinct grounds: (1) Decedent retained such broad economic control over the trust assets that they fall within section 302 (a) of the Revenue Act of 1926, as amended; (2) there was a possibility that the corpora might revert to decedent's estate, and the transfers were therefore intended to take effect in possession or enjoyment at or after death within the meaning of subsection (c) as construed in *Helvering* v. *Hallock*, 309 U. S. 106; (3) the reservation of the right to designate the income recipients during his lifetime had a similar effect, *Estate of Mary H. Hughes*, 44 B. T. A. 1196; and (4) decedent retained the power to alter, amend, or revoke within the meaning of subsection (d) (1), *Commissioner* v. *Bridgeport City*

*Trust Co.*, 124 Fed. (2d) 48; certiorari denied, 316 U. S. 672. The pertinent sections of the statute are set forth in the margin.[1]

Three of these contentions are without merit and may be easily disposed of. The argument that subsection (a) applies is an attempt, as we understand it, to invoke in the estate tax field the income tax doctrine of *Helvering* v. *Clifford*, 309 U. S. 331. But, assuming that the equivalence of ownership theory might be invoked in an estate tax case where the decedent retained "broad economic control" over the trust corpus, the premises upon which that doctrine rests are entirely lacking here. The transfers were for long periods and were made to an independent trust company over which decedent retained no control of management. The only interest which he retained was the power to control the disposition of income. This power ceased at his death and gave him no control whatever at any time over the remainders, which are sought to be taxed here. . We think it plain that decedent had no such interest in the trust corpora as to cause their taxation under subsection (a). *Estate of Flora W. Lasker*, 47 B. T. A. 172. In the recent case of *Helvering* v. *Safe Deposit & Trust Co. of Baltimore*, 316 U. S. 56, the Supreme Court held that in view of the legislative, judicial and administrative history of section 302 (a), the words "interest * * * of the decedent at the time of his death" were not intended by Congress to include property subject to an unexercised general testamentary power of appointment. Congress had dealt specifically with such powers in subsection (f). We think the reasoning of the Court in that case leads to the same conclusion here. Transfers of the sort involved here have been covered by specific provisions in subsections (c) and (d).

Nor are we able to sustain the proposed tax under the *Hallock* doctrine by reason of possibilities of reverter. The transfers before the Court in the *Hallock* case all provided for the possible reversion of the property *to the donor*. Here there was no possibility that decedent or

---

[1] Sec. 302. The value of the gross estate of the decedent shall be determined by including the value * * * of all property * * *

(a) To the extent of the interest therein of the decedent at the time of his death;

* * * * * * *

(c) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, (or of which he has at any time made a transfer, by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (1) the possession or enjoyment of, or the right to the income from, the property, or (2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom) * * *. [The portion in parentheses was added by section 803 (a) of the Revenue Act of 1932, which was substantially the same as the Joint Resolution of March 3, 1931.]

(d) (1) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke, * * *

his estate would ever reacquire the property. The corpus of the first trust, upon termination at the death of the survivor of decedent, his wife, and their children, was to be delivered to their grandchildren *per capita*. Nothing whatever was said as to a reversion to decedent or his estate. There were six grandchildren living at the time the first trust was created and seven when decedent died. The second trust specified that upon termination of the various life estates the trust corpus was to be paid to decedent's two daughters or their issue or, in default thereof, to decedent's heirs-at-law and next of kin. Respondent treats this provision as the same as a possibility of reverter to decedent's estate. In this, however, he is met squarely by *Commissioner* v. *Kellogg*, 119 Fed. (2d) 54, where the court regarded a similar provision as the granting of contingent remainders to the next of kin rather than a possibility of reverter to decedent or his estate. Similarly, in *Estate of Flora W. Lasker*, *supra*, p. 179, we held there was no "possibility of reverter or other attribute of title in decedent such as was present in the *Hallock* case," although the trust indenture contained a like provision for the passing of the property to the grantor's next of kin under certain circumstances. "The *Kellogg* case imposes a logical limitation on the scope of section 302 (c)." *Estate of Edward Lathrop Ballard*, 47 B. T. A. 784.

Subsection (d) (1) operates to tax any interest the enjoyment of which was subject to change at decedent's death by a power to alter, amend or revoke. The interest that is proposed to be taxed here is the value of the remainder of each trust. The remainders were not subject to change by decedent either at the time of his death or at any other time. His power of change was concerned only with the income *during his life*—an interest which obviously terminated at his death. A power to change the enjoyment of an interest which ceases at decedent's death does not warrant the inclusion in his gross estate of other interests which since their creation have been irrevocable and beyond his control. Instances where the decedent until the time of his death possessed the power to control the disposition of income or corpus *after* his death, such as *Commissioner* v. *Bridgeport City Trust Co.*, *supra*, and *Estate of Edward Lathrop Ballard*, *supra* (as to the Crehore trust), do not support respondent under the facts of the instant case. We hold that subsection (d) (1) is inapplicable. *McFadden* v. *United States*, 20 Fed. Supp. 625, 631.

The chief difficulty arises from respondent's principal position, that the right to designate who should receive the income during decedent's lifetime, even though under the amended terms of the first trust decedent was excluded from designating himself, brings the case within the rule of *Estate of Mary H. Hughes*, *supra*. We there held that a gift with the reservation of a life estate was encompassed within the

literal meaning of section 302 (c) of the 1926 Act as a transfer intended to take effect in possession or enjoyment at or after death. We expressed the opinion that *May* v. *Heiner*, 281 U. S. 238, an explicit decision by the Supreme Court to the opposite effect, may no longer be followed in the light of the Court's later opinion in *Helvering* v. *Hallock, supra.*

Petitioner relies upon *May* v. *Heiner, supra*, and it is at once apparent that, if that case is still controlling, the petitioner *a fortiori* is entitled to prevail. It is equally true, however, that petitioner must lose if the Joint Resolution of March 3, 1931, and section 803 (a) of the Revenue Act of 1932 are to be retroactively applied to reach transfers made before their enactment, for they provide that the gross estate shall include transfers where the donor has reserved "the right to the income * * * or the right * * * to designate the persons who shall possess or enjoy the property or the income therefrom." The transfers under consideration clearly fall within that classification.

There is language in the *Hughes* case to the effect that section 803 (a) of the 1932 Act applies to a transfer made in 1928, and the headnote so states. The Supreme Court, in *Hassett* v. *Welch*, 303 U. S. 303, however, held *as a matter of statutory construction* that section 803 (a) and the Joint Resolution "apply only to transfers * * * made subsequent to the dates of their adoption respectively." The *Welch* case involved a *May* v. *Heiner* fact situation. When we concluded in *Estate of Mary H. Hughes* that the *Hallock* case required that *May* v. *Heiner* be no longer followed, that, of course, meant that the *result* of the *Welch* case would no longer obtain, because it involved the same facts. But, certainly, nothing said by the Supreme Court in the *Hallock* case casts any doubt upon the reasoning or the actual holding in *Hassett* v. *Welch, supra*, namely, that as a matter of statutory construction section 803 (a) was not intended to be retroactive. The only question presented or decided in the *Welch* case was whether the amendments should be retroactive. It was *assumed* that if this question were answered in the negative, as it was, the case on the merits would be governed by *May* v. *Heiner*. Indeed, as to one of the cases involved, the Court pointed out that in applying for certiorari the Commissioner "did not assign error to the Circuit Court's ruling as to the nontestamentary character of the transfer * * *."

We are therefore of opinion, since subsequent Supreme Court decisions do not derogate from the conclusion that the amendments are not to be retroactively applied, that the provisions of section 803 (a) of the 1932 Act and the joint resolution may not be invoked to support the tax here. This conclusion accords with the Treasury regulations. Soon after enactment of the Joint Resolution of March 3,

1931, the Commissioner, with the approval of the Secretary, issued T. D. 4314, X-1 C. B. 450, to the effect that the provisions of the joint resolution would receive prospective application only; the 1929 edition of Regulations 70 was accordingly amended, T. D. 4336, XI-1 C. B. 329; and this position the Commissioner maintains in the latest regulations, promulgated on February 18, 1942, more than six months after the *Hughes* case was decided. Regulations 105, secs. 81.18 and 81.19.

The effect of our holding in the *Hughes* case was that the unglossed language of the phrase "intended to take effect in possession or enjoyment at or after his death," as it stood in section 302 (c) of the 1926 Act and corresponding sections of earlier acts, should be given the same construction that would obtain after amendment of the section by the joint resolution and section 803 (a) of the 1932 Act. Such a conclusion was contrary to *May* v. *Heiner*. Our authority for this conclusion was *Helvering* v. *Hallock, supra*, which dealt with a line of cases involving possibilities of reverter, a field in which there had been no comparable congressional amendment.

But the *May* v. *Heiner* case was solidly grounded on *Reinecke* v. *Northern Trust Co.*, 278 U. S. 339, and logically the two decisions should stand or fall together. However, in *Estate of Flora W. Lasker, supra*, which was decided after the *Hughes* case, we said, "we are not prepared to attempt to impeach the validity of *Reinecke* v. *Northern Trust Co., supra.*" In the circumstances, we feel impelled to reexamine the hypothesis upon which our departure in the *Hughes* case rested.

In *Reinecke* v. *Northern Trust Co., supra*, it was held that the shifting of possession and enjoyment from the life tenant to the remainderman at or after the donor's death did not warrant inclusion of the property in the donor's gross estate, the Court stating:

\* \* \* One may freely give his property to another by absolute gift without subjecting himself or his estate to a tax, but we are asked to say that this statute means that he may not make a gift inter vivos, equally absolute and complete, without subjecting it to a tax if the gift takes the form of a life estate in one with remainder over to another at or after the donor's death. It would require plain and compelling language to justify so incongruous a result and we think it is wanting in the present statute.

In *May* v. *Heiner, supra*, the same conclusion was reached, though the donor herself, if she survived her husband, was the life tenant, and the rule there set forth was followed in *Burnet* v. *Northern Trust Co.*, 283 U. S. 782; *Morsman* v. *Burnet*, 283 U. S. 783; and *McCormick* v. *Burnet*, 283 U. S. 784, all decided on March 2, 1931, and in all of which cases the grantor had reserved a life interest.

On April 13, 1931, the same Court decided *Klein* v. *United States*, 283 U. S. 231, holding that the gift of a life estate with the vesting of

the remainder contingent upon the donor predeceasing the beneficiary was a transfer intended to take effect at or after death. Subsequently, the opposite result ensued in *Helvering* v. *St. Louis Union Trust Co.*, 296 U. S. 39, and *Becker* v. *St. Louis Union Trust Co.*, 296 U. S. 48, upon the ground that the remainders, though conditioned for enjoyment upon the donor's prior death, were nevertheless vested.

In *Helvering* v. *Hallock, supra,* the two *St. Louis Union Trust Co.* cases were expressly overruled and the doctrine of the *Klein* case was reaffirmed. The opinion by Mr. Justice Frankfurter is directed specifically to gifts subject to a possibility of reverter. The stress placed upon the "elusive and subtle casuistries" and "unwitty diversities" of the law of contingent and vested remainders lends support to the view that the opinion was addressed only to transfers of that character.

We do not inquire upon the merits at this late date whether, within the meaning of the phrase "to take effect in possession or enjoyment at or after his death," there is a significant difference, practical or legal, between a gift of a remainder with the reservation of a life interest, on one hand, and on the other a gift of a present life interest with the reservation of a possibility of reverter. That it was seriously thought there was is shown by the fact that *Klein* v. *United States, supra,* was decided by a unanimous court within two months after its *per curiam* affirmance of *May* v. *Heiner* in *Burnet* v. *Northern Trust Co., Morsman* v. *Burnet,* and *McCormick* v. *Burnet.* That difference was removed by Congress in the enactment of the Joint Resolution of March 3, 1931, as to trusts thereafter created. The Supreme Court has yet to specifically state whether, as to trusts established theretofore with the reservation of a life estate, the distinction should be removed. A cognate question was before it in the *Hallock* case and we know *May* v. *Heiner* was not overlooked, for it is mentioned in a footnote. That it received consideration is also evident from Mr. Justice Roberts' dissent, in which he points out that the two cases expressly overruled had their origin in a principle enunciated in 1927 by *Shukert* v. *Allen*, 273 U. S. 545, and that the principle had become a settled rule by 1930 in the decision of *May* v. *Heiner, supra.*

It is also of great significance that in overruling the *St. Louis Union Trust Co.* cases the majority opinion in the *Hallock* case pays the greatest deference to the doctrine of *stare decisis*, stating that it "embodies an important social policy. It represents an element of continuity in law, and is rooted in the psychologic need to satisfy reasonable expectations." It may well be that the important social policy embodied in that doctrine was, or now would be, considered as outweighing the benefits of repudiating cases, though considered erroneous, the roots of which went deeper than those of the *St. Louis Union Trust Co.* cases and which, unlike those cases, had been devitalized

as to the future by Congressional action. Whatever the reason, a foot-note in the majority opinion speaks of the joint resolution as follows:

By the Joint Resolution of March 3, 1931, c. 454, 46 Stat. 1516, Congress displaced the construction which this Court put upon § 302 (c) in those cases wherein it was held that the reservation by a decedent of a life estate in property conveyed inter vivos, did not constitute a sufficient postponement of the remainder to bring it into the grantor's gross estate. *May* v. *Heiner*, 281 U. S. 238, * * * The speculative arguments that may be drawn from ad hoc legislation *affecting one set of decisions and the want of such legislation to modify another set of decisions* dealing with a somewhat different though cognate problem are well illustrated by this remedial amendment. * * *
* * * Since the decisions in the St. Louis Trust cases, Congress has not re-enacted § 302 (c). The amendments that Congress made *to other provisions of § 302 in connection with other situations than those now before the Court*, were made without re-enacting § 302 (c). * * * [Italics added.]

It appears clear that the Court in the *Hallock* case made a distinction between the two lines of decisions, and was dealing only with the particular facts before it. We should be slow to impute to the Court an intention to have the distinction obliterated by inference.

Other courts have refused to regard *May* v. *Heiner* as overruled by implication in the *Hallock* case. In *Commissioner* v. *Kellogg, supra*, the Third Circuit stated that "If the words of the statute just quoted are to receive the meaning contended for by the petitioner [Commissioner], they must receive it from the Supreme Court." In *Blakeslee* v. *Smith*, 110 Fed. (2d) 364, 366, the Second Circuit held in respect of a trust with income reserved to the donor:

We do not understand that the government is any longer contending that by this trust the settler made a transfer of any property intended to take effect in possession or enjoyment at or after his death. Nor could it maintain that position under the law as declared in *May* v. *Heiner*, * * *

The District Court for the Southern District of California in *Brown* v. *United States*, Fed. Supp., Nov. 25, 1941, unreported, said:

* * * Important cases of recent origin are not to be considered overruled by implication. Overruling by implication is no more favored than repealing by implication. And certainly, if Mr. Justice Frankfurter, who wrote the opinion and distinctly repudiated cases he considered inconsistent with the ruling the Court was about to make, had felt that *May* v. *Heiner, supra*, required either rationalization or outright repudiation, he would have said so. The fact that he did not is proof that that case stands unshaken.

In *Blunt* v. *Kelly*, 41 Fed. Supp. 721; affd., 131 Fed. (2d) 632, the United States District Court for New Jersey followed *Hassett* v. *Welch, supra*, and held that the reservation of a life estate did not warrant inclusion of the transferred property within the donor's estate, though the tax was upheld on other grounds. See also *Commissioner* v. *Flanders*, 111 Fed. (2d) 117; *Estate of William G. Thompson*, 41 B. T. A. 901, 908; *Chase National Bank* v. *Higgins*, 38 Fed. supp. 858.

Mindful of the importance placed upon the doctrine of *stare decisis* in the *Hallock* case, we inquire whether our decision in the *Hughes* case has become so entrenched as not to be set aside. We find it has been cited in seven subsequent cases. In *Estate of Flora W. Lasker*, *supra*, it was distinguished; in *Mabel Shaw Birkbeck Estate*, 47 B. T. A. 803, it was not followed, for that case turned upon constitutional grounds. In *Estate of Cora C. Reynolds*, 45 B. T. A. 44, the *Hughes* case was cited, but the transfer involved there had been made after 1932. In *Estate of Frederick S. Fish*, 45 B. T. A. 120, the *Hughes* case was followed, but an alternative ground was given, which alone would have sustained the tax. In *Brown* v. *United States*, *supra*, the court, as stated, expressly refused to follow the *Hughes* case. This leaves but two cases, *Estate of Pamelia D. Holland*, 47 B. T. A. 807, and *Estate of Harry A. Worcester*, 47 B. T. A. 909. We are of opinion that *stare decisis* should not be deemed an impediment to overruling the *Hughes* case under such circumstances.

In the face of the foregoing considerations and upon more mature deliberation, we believe the better course to pursue is to adhere to specific decisions of the Supreme Court until there is no doubt that they are no longer authority. Respondent's determination is therefore reversed on the authority of *May* v. *Heiner*, *supra*. The *Hughes* case will not be followed henceforth.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

STERNHAGEN, *J.*, dissenting: The essential question is whether *May* v. *Heiner* controls or whether the rationale of that case has been superseded by that of the *Hallock* case. I think the *Hallock* case is an expression of a conception which is more comprehensive than is recognized in the majority opinion, and that this conception is so inconsistent with *May* v. *Heiner* that the earlier opinion must be regarded as overruled by the later. This is what the Board held in *Estate of Mary H. Hughes*, 44 B. T. A. 1196; dismissed, C. C. A. 7th Cir., April 9, 1942, and I think that opinion should stand. The Board in the *Hughes* case did not assume the authority or have the temerity to overrule the decision of the Supreme Court in *May* v. *Heiner*. It did not essay to do so or think that it was doing so. It simply studied the *Hallock* opinion and, having reached the conclusion that it was in conflict with *May* v. *Heiner* (cf. the dissenting opinion of Mr. Justice Roberts), felt bound to follow the most recent view.[1]

I am unable to see how it can be denied that the possession or enjoyment of the property by one other than the decedent became

---

[1] This subject has been carefully discussed in Mr. Paul's book, Federal Estate and Gift Taxation, Vol. I, Chap. 7, particularly §§ 7.16 ; 7.24 ; 7.25 ; 7.32.

definitely effective only upon the decedent's death. In the trust which was modified after the Joint Resolution of March 3, 1931, the decedent had, until he died, the right to designate himself as a recipient of the income; in the other, he had until death the right to designate any one, other than himself. True, he had transferred the legal title to the trustee and had irrevocably named the remainderman, so that the passing of title was not affected by his death. But the statute is concerned with the transfer not of legal title, but of effective possession or enjoyment of the property transferred. Literally, the property was within the gross estate under the 1926 statute, before the joint resolution; and, being property which decedent had transferred by a trust under which he had retained for life the right to designate the persons who shall possess or enjoy the income therefrom, it was squarely within the language of the statute in effect at the time of death (sec. 302 (c), Revenue Act of 1926, as amended by sec. 803 (a), Revenue Act of 1932). Cf. *Commissioner v. Clise*, 122 Fed. (2d) 998; certiorari denied, 315 U. S. 821.

I would sustain the deficiency.

TURNER, HILL, HARRON, and OPPER, *JJ.*, agree with this dissent.

---

OPPER, *J.*, dissenting: While I agree with what Judge Sternhagen has said, I feel it should be added that in the portion of *Reinecke* v. *Northern Trust Co.* which is quoted and relied upon in *May* v. *Heiner* the fact was that the decedent had transferred the life estate as well as the remainder, stipulating only that the former should terminate five years after his death; whereas in *May* v. *Heiner* the remainder was transferred but a residuary equitable estate for the decedent's life was retained. There were other issues in the former case, but the facts involved were in no way germane to the issue in *May* v. *Heiner*. Thus, in *Reinecke* v. *Northern Trust Co.* it was clear that the possession and enjoyment of the property by someone other than the decedent became definitely and unconditionally effective immediately upon the transfer and was not dependent to any extent upon the fact or time of death, while in *May* v. *Heiner* the transfer of possession and enjoyment away from the decedent was effective only upon the termination of her life. This is a distinction related not to "the various niceties of the art of conveyancing or the law of contingent and vested remainders" but to the ascertainment of "the indispensable and intended event which brought the  *  *  * estate into being for the grantee[s] and effected its transmission from the dead to the living, thus satisfying the terms of the taxing act and justifying the tax imposed." *Klein* v. *United States*, 283 U. S. 231, 234.

It seems to me to follow that this Court is mistaken in saying: "But the *May* v. *Heiner* case was solidly grounded on *Reinecke* v. *Northern*

*Trust Co.*, 278 U. S. 339, and logically the two decisions should stand or fall together." See 44 Harvard Law Review, 131. How little there is to this statement can be illustrated, I believe, by assuming that another *Reinecke* v. *Northern Trust Co.* were to be considered today in connection with a trust created after 1932. I see no reason to expect that the decision would be different. However, if the *May* v. *Heiner* situation is again presented, the amendment in the 1931 Joint Resolution and the 1932 Act require a conclusion contrary to the result originally reached. *Estate of Cora C. Reynolds*, 45 B. T. A. 44. If it is possible for legislation to create an opposite result in one case and not in the other, it seems to me difficult to say that the cases are not distinguishable.

STERNHAGEN, TURNER, and HILL, *JJ.*, agree with this dissent.