ESTATE OF BERTHA LOW, DECEASED, HENRY M. ORNE AND MORRIS-TOWN TRUST COMPANY, EXECUTORS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 112733.   Promulgated December 13, 1943.

*William G. Murphy, Esq., T. Fergus Redmond, Esq., and Francis B. Hamlin, Esq.,* for the petitioners.
*Conway Kitchen, Esq.,* for the respondent.

1118

OPINION.

HARRON, *Judge: Issue 1.*—The first question is whether the value of the corpus of the trust created by decedent on September 25, 1923, is includible in her gross estate. The respondent has included it in the gross estate in his determination of the deficiency under his construction of section 811 (c) of the Internal Revenue Code.[1]

Respondent contends that the total value of the assets in the hands of the trustees at the date of decedent's death ($1,266,723.40) is includible in decedent's gross estate (1) as a transfer under which decedent retained for her life the possession and enjoyment of the income from the transferred property; (2) as a transfer made in contemplation of death; or (3) as a transfer intended to take effect in possession or enjoyment at or after death.

Respondent's first contention must be rejected. Inasmuch as the trust was created prior to the joint resolution of March 3, 1931, the corpus is not taxable even though decedent retained the enjoyment of the trust income during her life. *Hassett* v. *Welch*, 303 U. S. 303; *May* v. *Heiner*, 281 U. S. 238; *Estate of Edward E. Bradley*, 1 T. C. 518, 523.

Respondent's next contention, that the transfer was made in contemplation of death, must be determined by "carefully scrutinizing the circumstances * * * to detect the dominant motive of the donor in the light of his bodily and mental condition." *United States* v. *Wells*, 283 U. S. 102. The test is one of motive. If the thought of death was the impelling cause of the transfer, it was in contemplation of death and, therefore, includible in decedent's gross estate. Respondent argues that the trust indenture of September 25, 1923, was in contemplation of death for the reasons that it was executed about a week after the death of decedent's father at a time when decedent had 'thoughts of death" in her mind, and that within six months thereafter, decedent executed a will, disposing of the balance of her property in a residuary clause couched in the same language as the trust indenture.

---

[1] SEC. 811. GROSS ESTATE.

The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States—

* * * * * * *

(c) TRANSFERS IN CONTEMPLATION OF, OR TAKING EFFECT AT DEATH.—To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, or of which he has at any time made a transfer, by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (1) the possession or enjoyment of, or the right to the income from, the property, or (2) the right either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom ; except in case of a bona fide sale for an adequate and full consideration in money or money's worth. Any transfer of a material part of his property in the nature of a final disposition or distribution thereof, made by the decedent within two years prior to his death without such consideration, shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this subchapter.

From a consideration of the entire record, however, we are convinced that the creation of this trust was not motivated by contemplation of death. At the time of the transfer in 1923, decedent was 47 years of age and in good health. The evidence shows that decendent enjoyed a normal, healthy, and happy life until just prior to her death, which occurred suddenly in 1940. Prior to his death decedent's father had always managed her estate. Decedent had neither training nor experience in business affairs. The testimony is convincing that the sole purpose of the transfer was to relieve decedent of the cares and responsibilities inherent in the management of her large estate. Since she was prompted by concerns and matters of life in executing the trust indenture, it follows that respondent's finding that the transfer was made in contemplation of death was erroneous. *United States* v. *Wells, supra*; *Colorado National Bank of Denver* v. *Commissioner*, 305 U. S. 23.

Respondent's third contention that the trust constituted a transfer intended to take effect in possession or enjoyment at or after death presents a more difficult problem.

Under the provisions of 811 (c), a transfer intended to take effect in possession or enjoyment at or after death is includible in the transferor's gross estate. The purpose of this language was to prevent the avoidance of estate taxes by *inter vivos* gifts which were testamentary in character. Respondent, relying upon *Helvering* v. *Hallock*, 309 U. S. 106, submits that the distribution of trust corpus to decedent's heirs at law and next of kin at her death was in the nature of a testimentary disposition. He argues that this must be so because until her death her heirs at law and next of kin received nothing more than a right to a future expectancy, since at the time of the transfer, it was impossible to determine who would be her heirs at law and next of kin. In effect, respondent's argument is that a trust with income therefrom payable to the grantor, and the principal upon his death to those who would take in intestacy, effects merely a reversion in the grantor, and the next of kin take by descent and not by purchase. *Doctor* v. *Hughes*, 225 N. Y. 305; *Berlenbach* v. *Chemical Bank & Trust Co.*, 235 App. Div. 170; 256 N. Y. S. 563; affd., 260 N. Y. 539; *City Bank Farmers Trust Co.* v. *Miller*, 278 N. Y. 134.

Petitioners contend that under New York law, a deed of trust requiring payment of income to the grantor for life, with payment of principal to the grantor's distributees under the laws of intestacy, creates remainders in those who would be his distributees rather than a reversion in the grantor. *Engel* v. *Guaranty Trust Co. of New York*, 280 N. Y. 43; *Schoelekoff* v. *Marine Trust Co.*, 267 N. Y. 358; *Whittemore* v. *Equitable Trust Co. of New York*, 250 N. Y. 298; *Hopkins* v. *Bank of New York*, 261 *App. Div.* 465; 25 N. Y. S. (2d) 888;

*Minc* v. *Chase National Bank of City of New York*, 263 App. Div. 141; 31 N. Y. S. (2d) 592.

Although the decisions in New York on this question are not uniform, they all agree that the question must be decided by ascertaining the intent of the grantor. The rule as pointed out in *Doctor* v. *Hughes, supra,* "that a reservation to the heirs of the grantor is equivalent to the reservation of a reversion to the grantor himself," is at least a *prima facie* precept of construction. To transform into a remainder what would ordinarily be a reversion, there must be a clear expression of the intention to work the transformation.

We can not say, under the facts of this case, that decedent intended to create remainders in her heirs at law and next of kin.

Neither the indenture of September 25, 1923, nor its purported amendment expressly specified that the trust was irrevocable. In this respect, it differs from the Orne and Lyons trusts, discussed under the next issue, wherein decedent expressly provided that they should be irrevocable. Had decedent intended this trust to be irrevocable, she could have easily so provided. Here, decedent evidently did not intend to create rights in her presumptive heirs in the nature of remainders since in 1927 she believed the trust was revocable and that she had the right to amend it. She did amend the trust on April 29, 1927. If she had intended to create remainders in her heirs she would not, under New York law, have the power to amend the trust and change the beneficiaries.

The very wording of the original trust indenture and its amendment indicates that the distribution of trust corpus was testamentary in character and intended to take effect in possession or enjoyment after death. One of the elementary rules of law is that "a living person has no heirs." *Duffield* v. *Duffield,* 268 Ill. 29; 108 N. E. 673, 675; *Moffitt* v. *Williams,* 116 Neb. 785; 219 N. W. 138; *Avon State Bank* v. *Commercial & Savings Bank,* 49 S. D. 575; 207 N. W. 654, 656. For that reason, a son predeceasing his father never becomes his father's heir. *Root* v. *Arnold,* 133 Or. 417; 290 Pac. 1095. Only on death do heirs come into existence, for, as quoted in *Doctor* v. *Hughes, supra,* "the ancestor during his life beareth in his body (in judgment of law) all his heires, and therefore, it is truly said that *haeres est pars antecessoris.*" See *Morsman* v. *Commissioner,* 90 Fed. (2d) 18. Since the estate in decedent's "heirs at law and next of kin" could not come into existence until decedent's death there can be little doubt that "the death of the grantor was the indispensable and intended event which brought the larger estate into being for the grantee and effected its transmission from the dead to the living, thus satisfying the terms of the taxing act and justifying the tax imposed." *Helvering* v. *Hallock, supra; Klein* v. *United States,* 283 U. S.

231. Thus, under the language of these indentures, we can not say that the transfer was irrevocable, complete, and unaffected in any manner by decedent's death, so as to bring it within the rule enunciated in *Reinecke* v. *Northern Trust Co.* 278 U. S. 339.

It should also be noted that within a few months after the creation of the trust dated September 25, 1923, decedent executed a last will and testament disposing of her residuary estate to "such persons as may be living at the time of my death as would be my next of kin under the laws of the State of New York, had I died intestate a resident of said state." This language is substantially the same as that contained in the trust indenture and would seem to indicate that the only intention decedent had in both instruments was to have the New York law determine her heirs at law and next of kin upon her death.

Accordingly, it is held that the corpus of this trust is includible in decedent's gross estate under the provisions of section 811 (c) of the Internal Revenue Code, as a transfer intended to take effect in possession or enjoyment at or after decedent's death.

*Issue 2.*—The next question is whether the value of the corpora of the Orne and Lyons trusts is includible in decedent's gross estate. Respondent has included the values of the two trusts in the gross estate in his determination of the deficiency under the provisions of section 811 (c) of the Internal Revenue Code.

Both trusts were created under similar circumstances, and the beneficiaries were two employees of decedent. The Orne trust provided for the payment of the income to Orne for life, then to Orne's wife for life, with remainder over to Orne's surviving children in equal shares. If no children survived, then the trustees were to pay the principal in equal shares to five designated charities. In the Lyons' trust, the income was payable to Catherine C. Lyons for life, with remainder to whomsoever she might appoint by will. Both trusts were irrevocable and decedent retained no control over the management of the trust funds.

Respondent does not contend that the respective transfers were made in contemplation of death. He does contend, however, that the transfers were intended to take effect in possession or enjoyment at death in that decedent retained for her life "the possession or enjoyment of, or the right to the income from, the property." This argument is based upon his assertion that the income from the trusts was used for decedent's "pecuniary benefit" and to discharge decedent's legal obligation of paying salaries to these beneficiaries To support this argument he relies on *Douglas* v. *Willcuts*, 296 U. S 1. Since the language relied upon by respondent was not added to the statute until the joint resolution of March 3, 1931, it is apparent that the statute

is inapplicable to the Orne trust as created on February 19, 1930. *Hassett* v. *Welch, supra.*

The *rationale* of *Douglas* v. *Willcuts, supra,* has been applied in estate tax proceedings in determining whether a settlor has retained such an interest in trust income as to make the corpus includible in the gross estate under section 811 (c) of the Code. *Helvering* v. *Mercantile-Commerce Bank & Trust Co.,* 111 Fed. (2d) 224; *Mathilde B. Hooper, Administratrix,* 41 B. T. A. 114. We do not believe, however, that the principle of *Douglas* v. *Willcuts, supra,* is applicable under the particular facts of this case.

Here, decedent created the trusts to provide for two employees who had rendered faithful service to her. The trusts were irrevocable and the income therefrom was in no way dependent on whether the employees continued to render service to the decedent. They, on their part, voluntarily and gratuitously volunteered to continue such service without further compensation. The record is clear, however, that this voluntary act of the employees was not in consideration of the creation of the trusts. Decedent had no close relatives and, in addition to the trusts, she bequeathed substantial amounts to these employees. We do not believe that the income from these trusts was applied to discharge decedent's legal obligations, as none existed, and it does not appear that she received such pecuniary benefits as to render the corpora of the trusts includible in decedent's gross estate within the meaning and intent of section 811 (c) of the Code.

Respondent advances the further argument that the corpora of the trusts is includible in decedent's gross estate under *Helvering* v. *Hallock, supra,* on the ground that a possibility of reverter by operation of law existed with respect to each trust. He concedes, however, that under the Orne trust this possibility is remote. The only possibility of reverter in that trust was upon the failure of designated charities. Under the circumstances, the possibility that the trust property would revert to decedent or her estate by operation of law is too remote to bring the corpus within section 811 (c). Here, as in *Commissioner* v. *Kellogg,* 119 Fed. (2d) 54, "the grantor during his lifetime disposed of his interest in the corpus of the trust as well as any man could"; and "no *inter vivos* trust can ever be made that would not be includible in the grantor's estate for the purpose of taxation if the petitioner's [Commissioner's] view prevails."

Although the Lyons' trust presents a closer question, it is our opinion that the possibility of reverter there is also too remote to allow the corpus to be includible in decedent's gross estate. The only possibility of reverter was in the event that the life beneficiary should die without exercising her general power of appointment. Decedent, however, had given nothing contingently upon her death, which is "the

vital factor" toward which our inquiry is directed. *Helvering* v. *Hallock, supra*; *Estate of Mabel H. Houghton*, 2 T. C. 871. In the present case, nothing was transmitted from the dead to the living upon decedent's demise. Immediately prior to her death decedent was entitled to receive the corpus of the fund upon Catherine Lyons' death, provided Catherine Lyons failed to exercise her power of appointment. Immediately after decedent's death her estate was entitled to receive the corpus of the fund upon Catherine Lyons' death, provided Catherine Lyons failed to exercise her power of appointment. Nothing was changed by the fact of decedent's death; the trust fund and its ownership remained the same. -

Accordingly, it is held that the corpora of the Orne and the Lyons trusts are not includible in decedent's gross estate under any principle derived from the *Hallock* case or under section 811 (c) of the Internal Revenue Code.

*Issue 3.*—The final question concerns the value of decedent's one-half interest in a bond and mortgage of the Suerken Realty Corporation.

Petitioners returned decedent's interest in this bond and mortgage at 75 percent of one-half of the unpaid balance of principal, or $53,613.30, whereas, respondent determined the value to be 100 percent, or $71,484.80. Petitioners, in support of their valuation, contend that the fair market value of decedent's one-half interest is only 75 percent of its normal value because of the New York mortgage moratorium law placing certain limitations upon foreclosure proceedings, and also because of the participation of two other parties in the management and control of the investment.

Petitioners concede that the mortgaged premises had a "fair market value equal to or more than the unpaid principal of said bond and mortgage." The bond and mortgage were not in default.

A prima facie presumption exists that the respondent's ruling is correct and the burden of proof lies upon the petitioners. *Welch* v. *Helvering*, 290 U. S. 111; *Old Mission Portland Cement Co.* v. *Helvering*, 293 U. S. 289. We do not believe that petitioners have overcome this presumption.

Petitioners' only witness on this issue, Simmons, testified that the value returned by the estate was based upon his appraisal. He was unable, however, to give any reason for the appraisal, basing his opinion solely upon his general ideas of values of mortgages. He did not cite specific sales of similar interests in mortgages which would throw some light upon the accuracy of his opinion. It is conceivable that a participating interest in a bond and mortgage of this nature might be more readily marketable than the whole mortgage.

Considering the record as a whole, it must be held that petitioners have not overcome the presumption of the correctness of respondent's determination, and it is, therefore, held that respondent did not err in determining the value of decedent's aliquot portion.

*Decision will be entered under Rule 50.*