ESTATE OF CHARLES DELANY, DECEASED, HOWARD S. DELANY, ET AL., EXECUTORS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 109861. Promulgated March 17, 1943.

*Frank A. Moorshead, Esq.*, for the petitioners.
*Lewis S. Pendleton, Esq.*, for the respondent.

**OPINION.**

HILL, *Judge:* Petitioners assigned as error the action of respondent in including in decedent's gross estate the value of (a) the one-third interest of decedent in the estate of Theodore M. Delany, (b) the corpus of each of the three trusts above described, and (c) the direct gift of securities made by decedent to his son in 1935. At the hearing, respondent conceded that the value of decedent's interest in the estate of Theodore M. Delany should be excluded from the gross estate herein. In respect of the remaining four issues, substantially only two questions are submitted for decision, namely, whether or not some of the transfers were made in contemplation of death and others intended to take effect in possession or enjoyment at or after death, within the meaning of subsections (c) and/or (g) of section 302 of the Revenue Act of 1926, as amended.[1]

Respondent contends that the transfers to the insurance trust of 1917, to the funded insurance trust of 1923, and to the trust of 1935 were all intended to take effect in possession or enjoyment at decedent's death. He further contends that the funded insurance trust of 1923, the trust of 1935, and the gift of securities by decedent to his son in 1935 were transfers made in contemplation of death.

In support of his position on the question of whether or not certain of the transfers mentioned above were intended to take effect in possession or enjoyment at decedent's death, respondent points out that if the policies of insurance transferred to the insurance trusts had been held by decedent at the date of his death and had provided for payment of the proceeds to him or to his estate if he survived the

---

[1] SEC. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside the United States—

* * * * * *

(c) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death * * * except in case of a bona fide sale for an adequate and full consideration in money or money's worth.

* * * * * *

(g) To the extent of the amount receivable by the executor as insurance under policies taken out by the decedent upon his own life; and to the extent of the excess over $40,000 of the amount receivable by all other beneficiaries as insurance under policies taken out by the decedent upon his own life.

designated beneficiaries, the retention of such reversionary interests would clearly require inclusion of the proceeds in the gross estate under the provisions of section 302 (g), *supra*, citing, *inter alia, Estate of John E. Cain, Sr.*, 43 B. T. A. 1133. Similarily, respondent says that the securities transferred to the funded insurance trust of 1923 and to the 1935 trust would plainly be includible in the gross estate under section 302 (c), *supra*, if decedent had. *expressly* provided in the trust instruments that the funds should revert to him upon the predecease of the named beneficiaries, citing *Helvering ]v. Hallock*, 309 U. S. 106, and *Estate of Horatio Gates Lloyd*, 47 B. T. A. 349.

Respondent argues that the only material distinction between the present case and those cited above lies in the fact that in the cited cases there were *express* provisions for the return of the property to the donors upon certain contingencies, whereas in the case at bar reversionary interests were reposed in the decedent *by operation of law*, resulting from his failure to provide for dispositions over in the event the designated beneficiaries should predecease him. This, respondent contends, is "a distinction without a difference," in so far as it affects the underlying principle of the *Hallock* decision.

The argument of both parties here rests upon the premise that the question of the inclusion in the gross estate of the corpora of the three trusts, other than the proceeds of insurance policies, is governed by the provisions of section 302 (c), and this view is supported by the plain language of the statute. But whether inclusion of the life insurance policies is dependent only upon the provisions of section 302 (g), or the provisions of both subdivisions (c) and (g), is unimportant here if it should be determined that the transfers involved were not made in contemplation of death and were not intended to take effect at or after death. However, on this question, see *Estate of John E. Cain, Sr., supra*, involving the transfer of a life insurance policy intended to take effect at or after death, and *May Billings et al., Executors*, 35 B. T. A. 1147, 1153, involving life insurance policies assigned in contemplation of death. Also, cf. *Old Point National Bank, Executor*, 39 B. T. A. 343, 355.

In any event, it seems clear to us that if all the transfers to the trusts here in controversy fall without the ambit of section 302 (c), no amount may be included in the gross estate in respect of the life insurance policies under subdivision (g), and our further discussion of the issues will be limited to the questions directly presented, namely, whether any of the transfers were intended to take effect at or after death or were made in contemplation of death.

Thus, the first question presented in respect of the corpus of each of the three trusts, including both insurance policies and securities,

is whether or not the transfers were intended to take effect in possession or enjoyment at decedent's death.

All three trust instruments were irrevocable, and neither contained any express provision whereby the corpus, or any incident of legal ownership therein, would revert to the grantor. But respondent bases his argument upon the contention that reversionary interests were reposed in decedent by operation of law, that is, that the corpora would revert to decedent upon failure of the trusts, and that, under the doctrine of the *Hallock* case, such reposed interests bring the trusts within the gross estate of decedent as effectively as though expressly retained in the trust instruments. We can not agree with respondent's conclusions on this point.

In *Helvering* v. *Hallock*, *supra*, and in the companion cases decided therewith, the grantors *expressly* reserved contingent reversionary interests, which, the court held, were within the gross estates as transfers "intended to take effect in possession or enjoyment at or after death." In *Commissioner* v. *Kellogg*, 119 Fed. (2d) 54, the Circuit Court of Appeals for the Third Circuit held that the trust property should not be included in the grantor's gross estate where there was no *expressly* reserved reversionary interest, the corpus being given to the children of the grantor and their issue, provided that if all of such children should predecease grantor and his wife, the property should pass to the then surviving next of kin of the grantor. It is to be noted, however, that a contingent reversionary interest was reposed in the grantor by operation of law by reason of the fact that the corpus would have reverted to him upon failure of the trust, as in the instant case.

The court distinguished the *Kellogg* case as not controlled by the *Hallock* decision on the very ground which respondent here urges is not material. We recognized the validity of that distinction in *Estate of Edward Lathrop Ballard*, 47 B. T. A. 784, and *Estate of Edward E. Bradley*, 1 T. C. 518, where we pointed out that the court in *Commissioner* v. *Kellogg* refused to apply the doctrine of the *Hallock* decision to a case where the trust property transferred by the decedent might revert to the decedent not by virtue of the terms of the trust instrument, but because of the failure of the trust, and expressed the opinion that the *Kellogg* case imposed a logical limitation on the scope of section 302 (c). See also *Estate of Horatio Gates Lloyd*, *supra*, and *Estate of Flora W. Lasker*, 47 B. T. A. 172, 179.

The corpus of the insurance trust of 1917 would have reverted to decedent by operation of law only in the event that his two daughters and their issue predeceased him. Likewise, no reversionary interest in the funded insurance trust of 1923 was reposed in decedent except

·upon the condition that he survived his two daughters and their issue, and in case the daughters died without issue, then the issue of any of decedent's children. And the return to the decedent of the corpus of the 1935 trust was dependent upon his survival of his two daughters and their issue, and all of the decedent's lineal descendants, as well as the children of the decedent's two sisters and their issue. In the case of the last named trust the possibility of reverter plainly approaches absurdity, and for that reason should be disregarded.

The case at bar is not distinguishable from *Commissioner* v. *Kellogg*, *supra*, and as the court there pointed out in its opinion, no *inter vivos* trust could ever be made that would not be includible in the grantor's estate for purposes of the estate tax if the Commissioner's contentions prevailed. We are not persuaded that the doctrine of the *Hallock* decision should be extended to include such a construction of section 302 (c), *supra*. Accordingly, we hold that the transfers to the three trusts here in controversy were not intended to take effect in possession or enjoyment at decedent's death, and that no part of the corpus of either trust is includible in his gross estate for that reason.

The remaining question for decision is whether or not the funded insurance trust of 1923, the trust of 1935, and the gift of securities by decedent to his son in 1935, or either of them, constituted transfers made in contemplation of death and were on that account includible in gross estate. Whether or not these transfers were made in contemplation of death is a question of fact, which we must determine from the evidence before us. The phrase "in contemplation of death" means that the thought of death must be the dominant or impelling motive for the transfer. *United States* v. *Wells*, 283 U. S. 102. We have found as a fact that the transfers in controversy were not made in contemplation of death, within the meaning of the statute, for reasons which will be briefly discussed below.

The testimony in the record before us bearing on this question is singularly free of contradictions, and its credibility is unimpaired by conflict with any of the surrounding facts and circumstances. Eleven witnesses, including members of decedent's family, his physician, friends, and business associates, testified to decedent's health over a long period of years, extending up to the time of his death. This evidence overwhelmingly establishes that throughout decedent's adult life his health was unusually good; the witnesses used such terms as excellent, rugged, very good, robust. Decedent never suffered from any serious illness, and only on a few occasions was confined to his bed with a cold. He was very active and alert and was never morbid, but on the contrary was extremely cheerful. He was always planning for the future years and never expressed apprehension of approaching death. He suffered no "last illness" as that term is commonly understood; he

died very suddenly from coronary thrombosis or coronary occlusion. Examinations of decedent's heart by electrocardiogram and otherwise, on several occasions prior to his death, disclosed no indication of coronary thrombosis or sclerosis.

The predominant motives of decedent in making the gifts in controversy were (1) to relieve himself of the responsibility of handling a portion of his extensive holdings of securities; (2) he wanted his children to assume responsibility of management during his lifetime; and (3) he desired to reduce income tax liability. It is also shown that the decedent was moved to make gifts to the trusts for the purpose of providing his daughters with independent incomes, and the gift to his son was for the purpose of equalizing the gifts among the children. All of these were purposes associated with life rather than death, and, in such circumstances, the value of the gifts is not includible in decedent's gross estate. *Estate of Robert Wetherill*, 36 B. T. A. 1259, 1267; *Estate of Caroline Foerderer Artman*, 38 B. T. A. 1020; *Constance McCormick, Executrix*, 38 B. T. A. 308; *Edith Huggard Sharp et al., Executors*, 33 B. T. A. 290; affd., 91 Fed. (2d) 804; *Central National Bank of Cleveland* v. *United States* (Ct. Cls.), 41 Fed. Supp. 239.

Decedent was approximately 80 years and 7 months of age at the date of his death, and was past 78 when he made the last two gifts in 1935, but age alone is not the decisive test. See *Estate of Robert Wetherill, supra*, in which case the decedent was 83 years old at death. In *Edward C. Moore, Jr., et al. Executors*, 21 B. T. A. 279, the decedent died at the age of 86, and the gifts were made within two years of death. In *Estate of Katharine H. Talbott*, 42 B. T. A. 1081, the decedent died of coronary occlusion at the age of 71 years. In the two latter cases we held that the gifts were not made in contemplation of death. The facts in the *Talbott* case are strikingly similar to the case at bar. As the Supreme Court pointed out in *United States* v. *Wells, supra:*

Old age may give premonitions and promptings independent of mortal disease. Yet age in itself can not be regarded as furnishing a decisive test, for sound health and purposes associated with life, rather than with death, may motivate the transfer.

We find nothing in the present record to indicate that the contested transfers were *gifts causa mortis* or were intended as substitutes for testamentary dispositions. While the aggregate of the gifts was very substantial in amount, decedent retained a material portion of his property, which he disposed of by will. The value of the gross estate was returned by petitioners at $763,754.22 and was determined by respondent at $1,489,091.17.

On the issues submitted, respondent's action is reversed.

*Decision will be entered under Rule 50.*