Estate of Henry S. Downe, Deceased, Ethel Lestrade Downe, Executrix, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 110351.   Promulgated November 2, 1943.

*Robert A. West, Esq.*, for the petitioner.
*Walt Mandry, Esq.*, for the respondent.

OPINION.

Tyson, *Judge:* The respondent valued the property of decedent's gross estate as of the date of decedent's death "since the return was not filed within fifteen months after the date of death" and contends that he was right in doing so. The date of death was December 8, 1938, and the only evidence submitted as to the time of filing of the estate tax return was the stipulation that it "was mailed to the Collector of Internal Revenue, 21st District, Syracuse, New York on Friday, March 8, 1940 (not a legal holiday) and was stamped received by said Collector on March 9, 1940."

Under section 302 (j) of the Revenue Act of 1926, as added by section 202 (a) of the Revenue Act of 1935, the executor of a decedent's estate, instead of valuing the property of the estate as of the date of the decedent's death, may value it as of one year thereafter if he "so elects upon his return (if filed within the time prescribed by law or prescribed by the Commissioner in pursuance of law) * * *."

Article 11 of Regulations 80 (p. 42), applicable to section 302 (j), *supra*, provides, in part, that:

The election is available to the executor only at the time the return is filed, and only if the return is filed within 15 months from the decedent's death, or within the period of an extension of time for filing granted under the provisions of article 68 or 69 of these regulations.

Article 63 of Regulations 80 (p. 97), also applicable to 302 (j), *supra*, provides, in part, that:

If the return is due 15 months after the decedent's death, the due date is the day of the fifteenth calendar month after his death numerically corresponding to the day of the calendar month in which death occurred * * *. If placed in the mails the return should be posted in ample time to reach the collector's office, under ordinary handling of the mails, on or before the date on which the return is required to be filed.

There being no evidence that an extension of time was requested or granted, the return was due by March 8, 1940. While we know it was "mailed" on that date, we are not informed as to the time of mailing or the place from which it was mailed; nor are we informed of any reasonable cause why the return was not timely filed. We accordingly can not determine that the return was "posted in ample time to reach the collector's office, under ordinary handling of the mails, on or before the date on which the return is required to be filed," as required by the regulations; and we hold that petitioner's estate tax return here involved was delinquently filed and that consequently

the estate must be valued as of the date of decedent's death, as determined by respondent.

The respondent included in decedent's gross estate the corpus of the trust created by him, wherein his wife was a life beneficiary of the income and after her death the grantor, if he survived her, was the beneficiary for his life, with remainder to their children and the issue thereof. He supports the propriety of such inclusion on three grounds, the first of which is an alleged retention by the grantor, decedent, of a possibility of reverter of the corpus by operation of law due to decedent's failure to name a beneficiary who would take in the event decedent's children and his wife's children and their issue should predecease him without exercising the testamentary powers of appointment provided for.

How tangible was this possibility of reverter may be imagined from the fact that decedent, who was 78 at his death, would have had to survive his wife, 57; his two children, 46 and 49, respectively; his two grandchildren, one aged three and the other not then born; his wife's two children, 32 and 34, respectively; his wife's grandchild, seven; and the possible unborn issue thereof.

Under the circumstances we do not consider that such a possibility of reverter operates to establish a transfer intended to take effect in possession or enjoyment at or after decedent's death within the meaning of section 302 (c), *supra*, because such possibility could actually be realized only by operation of law upon "failure of the trust" and not through any express provision of the trust instrument by which "he could pull the res back to him or invade the corpus." *Commissioner* v. *Kellogg*, 119 Fed. (2d) 54; *Estate of Edward Lathrop Ballard*, 47 B. T. A. 784 (on appeal, C. C. A., 2d Cir.); *Estate of Charles Delany*, 1 T. C. 781; *Estate of Lester Hofheimer*, 2 T. C. 773; *Estate of Mabel H. Houghton*, 2 T. C. 871; and *Estate of Ellen Portia Conger Goodyear*, 2 T. C. 885.

The second ground for respondent's contention that the trust corpus should be included in the gross estate of decedent is that decedent retained the power to alter, amend, or revoke the trust within the meaning of section 302 (d) (1) of the Revenue Act of 1926 as amended by section 805 (a) of the Revenue Act of 1936.[1] The retained power

[1] SEC. 805. ESTATE TAXES—REVOCABLE TRANSFERS.

(a) Section 302 (d) (1) of the Revenue Act of 1926, as amended, is amended to read as follows:

"(d) (1) To the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona-fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power (in whatever capacity exercisable) by the decedent alone or by the decedent in conjunction with any other person (without regard to when or from what source the decedent acquired such power), to alter, amend, revoke, or terminate, or where any such power is relinquished in contemplation of decedent's death."

in question is that provided in paragraph "Second" of the trust instrument, reserving to the grantor "the option to direct in writing the Trustee to issue voting proxies on and to retain, sell, exchange, invest and reinvest any of the trust property held hereunder in such manner as he may direct and without liability to the Trustee for resulting loss." Subject to this option, the trustee had the right to make investments in its own discretion.

In *Emma B. Maloy*, 45 B. T. A. 1104, the grantor of an irrevocable trust transferred certain securities to a corporate trustee. The trust instrument provided that the trustee when so requested in writing by the grantor *should* "sell any part or parts of said trust estate in the manner and for the consideration or considerations which I may in such request express," and that it should "whenever requested by me in writing so to do, invest any funds in their hands forming a part of the principal of said trust estate in the manner and by the purchase of such property as I may in such written request indicate." The issues presented and decided were whether the grantor was empowered to revoke the trust and revest in herself the corpus by requiring the trustee to convey such corpus to her for a nominal consideration and thus render her taxable with the income of the trust under section 166 of the Revenue Act of 1936, or, alternately, whether she retained such control over the administration of the corpus of the trust as to render her taxable on the income therefrom under section 22 (a) of the same act. We held that she was not so taxable under either section, and we said with reference to section 166:

Respondent argues that the provision of the trust instrument hereinbefore set out (referring to the provisions we have just above summarized) is so broad as to reserve to petitioner the right to revest in herself the corpus of each trust by *requiring* the trustee to convey such corpus to her for a *nominal* consideration and that petitioner is accordingly liable for tax on all income, * * * under section 166, *supra*. We do not agree. * * * No such power is expressly reserved * * *. We think no construction of this provision as including such right, when it was not explicitly reserved, could have been made without a disregard of the cardinal duty of the trustee to safeguard and conserve the corpora of these trusts in the interest * * * (of the beneficiaries). [Parentheses and italics supplied.]

See also *Christopher L. Ward*, 40 B. T. A. 225; reversed on another point, 119 Fed. (2d) 207; *John P. Wilson*, 42 B. T. A. 1260; reversed on another point, 125 Fed. (2d) 307; Cf. *Claude R. Branch*, 40 B. T. A. 1044; affd., 114 Fed. (2d) 985; *Carleton H. Palmer*, 40 B. T. A. 1002; affd., 115 Fed. (2d) 368 by C. C. A., 2d Cir., on authority of *Commissioner* v. *Branch*, 114 Fed. (2d) 985; and *Frederick Ayer*, 45 B. T. A. 146.

While the cited cases, including the *Maloy* and *Ward* cases (which latter two are more in point than are the others) all involved income

tax rather than estate tax, as is here involved, the issue of trust revocability or nonrevocability was the same in those cases as it is here, even though that decisive issue arose in those cases out of the applicability or nonapplicability of section 166, *supra*, while here it arises out of the applicability or nonapplicability of section 302 (d) (1), *supra*. The tax incidence in each of the cited cases, as it does here, depended upon whether or not there was a retained power in the grantor to alter, amend, or revoke a trust he or she had created. The two sections have a cognate purpose. Cf. *Helvering* v. *City Bank Farmers Trust Co.*, 296 U. S. 85, 89; *David J. Lit et al., Executors*, 28 B. T. A. 853, 859, 860; and *Louis C. Raegner, Jr., et al., Executors*, 29 B. T. A. 1243, 1249 (appeal dismissed by C. C. A., 2d Cir., Oct. 1935).

We think the decisions in the *Maloy* and *Ward* cases to the effect that the powers there reserved by the grantor were not sufficient to enable him to amend, alter, revoke, or terminate the trust under section 166, *supra*, must lead us to a like conclusion, under section 302 (d) (1), *supra*, as to the effect of the powers reserved by decedent here.

The sole authority cited by respondent in support of his second contention is *Commonwealth Trust Co. of Pittsburgh* v. *Driscoll* (Dist. Ct., W. Dist. Pa., Jan. 28, 1943); affd., 137 Fed. (2d) 653 (C. C. A. 3d Cir., July 9, 1943). In that case the decedent created a trust, transferring to the trust certain securities, the income to be disposed of according to the provisions of the trust, and the decedent as grantor under the terms of the trust having the right to *make any* substitutions of securities from time to time as he deemed advisable. The District Court and the Circuit Court on appeal held that such power to substitute *any* securities constituted the retention by the grantor of a power to alter, amend, or revoke the trust under the provisions of section 302 (d) (1) of the Revenue Act of 1926, as amended, and that, therefore, the corpus of the trust was includable in the estate of decedent. grantor, under that section. The Circuit Court said:

* * * He reserved "the right to make any substitutions of securities from time to time as he deems advisable." No restriction was made, however, as to the kind of value of the securities which could be substituted. It is held that the transfer was taxable as one with a right retained to alter, amend, or revoke.

Apparently the court concluded that the power of substitution was equivalent to a power of withdrawal of the trust property with the revocation of the trust as a necessary consequence. The decedent here retained no such power. He merely retained the power to direct the investment policy of the trustee and not the right, as in the *Driscoll* case, "to make any substitutions of securities from time to time as he deems advisable."

We think the second ground of respondent's contention is untenable.

The third ground for respondent's contention that the trust corpus should be included in the estate of decedent is that decedent retained such economic control over the corpus that he must be regarded as the owner thereof within the rule announced in *Helvering* v. *Clifford*, 309 U. S. 331; and that therefore the value of the corpus is includable in decedent's estate under section 302 (a) and (c) of the Revenue Act of 1926, as amended.

We think that this ground is also untenable under the reasoning and holdings in *Commissioner* v. *Branch*, 114 Fed. (2d) 985; *Emma B. Maloy, supra;* and *George H. Whiteley*, 2 T. C. 618. In the *Maloy* case we said, in holding that the trust there involved did not come within the rule of the *Clifford* case: "This one power to direct investments which petitioner retained constituted no such 'bundle of rights' as the Court in the *Clifford* case held to be a substantial retention of the benefits of ownership."

While the *Branch* and *Maloy* cases just above cited involved income and not estate tax, the fundamental and essential question for decision in each was whether the grantor of a trust should be regarded as the owner of the corpus within the rule of the *Clifford* case. In each case the solution of this question depended alone upon the effect of a provision of a trust instrument involved whereby the grantor (individually in the *Maloy* case, and as cotrustee in the *Branch* case) retained control of sales, investments, and reinvestments of the trust property as did the decedent, grantor, here. The effect of this provision was the only ground assigned by the Government in those cases for the application of the rule in the *Clifford* case, and assuming, although not so deciding, that the rule in the *Clifford* case is applicable here under section 302 (a) and (c) of the Revenue Act of 1926, as amended, we, for similar reasons as stated in the *Maloy* case, reach the same conclusion as to the trust corpus here involved as was there reached as to the trust there involved, i. e., that the trust corpus here does not come within the operation of the rule announced in the *Clifford* case and that consequently its value is not includable in decedent's estate by reason of that rule.

Respondent contends that, even though we decide that it would be improper to include in the gross estate of decedent the value of the trust created by him, nevertheless the value of the trust "nominally created by the decedent's wife" is includable in decedent's gross estate, for the reason that the two trusts were so reciprocal as that decedent must be treated as the real grantor in the "nominally created" trust of the wife and that, as such real grantor, decedent would have received the income therefrom during his life.

Assuming, without deciding, that the two trusts were reciprocal and that decedent must be treated as the real grantor in the "nominally created" trust of his wife, we nevertheless are of the opinion that the value of the trust estate "nominally created" by decedent's wife is not includable in decedent's estate and for the reasons we shall now give, together with those we have given in reaching the conclusion that the value of the trust estate created by decedent is not so includable. The only essential difference in the status of the decedent in the trust created by himself and what would be his status as the assumed grantor in the "nominally created" trust of his wife would be that in the latter he would receive the income for life as the initial beneficiary of the trust, while in the former he would not. Under authority of *Estate of Edward E. Bradley*, 1 T. C. 518, we are of the opinion that such a difference between the status of decedent under the two trusts does not justify a conclusion that the value of the estate of the trust "nominally created" by his wife should be included in decedent's estate.

We hold that the value of the estate of the trust "nominally created" by his wife, and of which trust we have assumed the decedent must be treated as the real grantor, is not includable in the value of his estate.

Since the estate of decedent is to be valued as of the date of his death, the $1,679.50 dividends paid in the year subsequent to his death are not includable in the valuation of his estate.

*Decision will be entered under Rule 50.*