Estate of T. M. Flynn, Deceased, J. J. Flynn and Annie Johnson Flynn, Executors, and J. J. Flynn and Annie Johnson Flynn, Individually v. Commissioner.
Estate of Flynn v. Commissioner
Docket No. 3079.
United States Tax Court
1944 Tax Ct. Memo LEXIS 31; 3 T.C.M. (CCH) 1287; T.C.M. (RIA) 44387; November 29, 1944
*31 Herschel L. Washington, Esq., for the petitioners. Roy C. Hormberg, Esq., for the respondent. DISNEY
Memorandum Findings of Fact and Opinion DISNEY, Judge: This proceeding involves the redetermination of a deficiency of $4,724.22 in estate tax, of which $4,723.81 is in controversy. The issue is whether the respondent erred in including in gross estate the amount of $49,156 as the value of shares of stock transferred in trust during the lifetime of the decedent. The evidence consists of a stipulation of facts, testimony and exhibits from which we make the following findings of fact. Findings of Fact The petitioners were the executors of the estate of T. M. Flynn, who died testate on November 27, 1940, at the age of 82 years, while a resident of Parsons, Kansas. The executors were discharged as such on March 31, 1942, after the estate was closed. They filed their estate tax return with the collector for the district of Kansas. On about December 31, 1935, the decedent transferred 200 shares of capital stock of the State Bank of Parsons to his son, J. J. Flynn, in trust, for the purposes set forth in a declaration of trust executed by the son on December 31, 1935. The trust required *32 the trustee to obtain the consent of the settlor's wife and four children to any sale of the stock; give the settlor the right to counsel with the trustee regarding the management and control of the stock and the disposition and reinvestment of the proceeds thereof; authorized the trustee to vote the stock and issue proxies for the voting thereof; provided that the net income of the trust was distributable semi-annually to the settlor's wife during her lifetime, and upon her death to the four children, in equal shares, and upon their death to their issue; that the settlor had power to appoint a new trustee in the event his son resigned as such, or became incapable of acting as trustee, and that upon the settlor's death the majority in amount of the adult beneficiaries had power to exercise the right; also, that upon the termination of the trust, the accumulated income and corpus was to go to the settlor's children and their issue. The trust was to continue until January 1, 1960, except that after the death of the survivor of the settlor and his wife, it could be terminated by agreement of all of the surviving adult beneficiaries. The stock transferred by the decedent had a value *33 of $49,156, for estate tax purposes. At the time of his death, and for many years prior thereto, the decedent was president of the State Bank of Parsons. Prior to the transfer of the stock, the grantor owned 259 shares of the 500 shares of the outstanding stock of the bank. At the time of the transfer, the decedent said that his reasons for creating the trust were to retain control of the bank in his family for a long period of years, by making it impossible for them to sell the stock and control of the bank to outsiders, and that he desired his son to assume management of the bank while he was still alive and could give counsel and guidance to him, and thus enable his son to acquire sufficient experience to take over his duties at the bank. During the years 1936 to 1940, inclusive, the income of the trust was $1,600, $2,000, $800, $1,600, and $2,000, respectively, all of which was distributed by the trustee to the settlor's wife, in accordance with the terms of the trust. The decedent and his wife maintained a joint bank account for many years prior to 1936, and each had power to draw checks upon the account. The decedent's wife frequently withdrew money from the account. The decedent *34 made withdrawals from the account after he created the trust. In about 1913, decedent's wife deposited in the account a sum between $6,000 and $10,000 which she had received from her father's estate. The distributions received by the settlor's wife under the trust, and the dividends received on the stock by the settlor prior to the creation of the trust were deposited in the account. The balance in the account when the decedent died, was $764.19. The decedent deposited his salary of $200 a month in a checking account in the name of his wife, who used the money to pay household expenses. There was a balance of $49.75 in the account at the time of the decedent's death. The will of the decedent executed December 11, 1939, left all of his property to his son, in trust, with directions to pay the income therefrom, and upon termination thereof to distribute the corpus, to the same persons and in the same proportions as was provided in the declaration of trust. The trust was to continue as to the bank stock until January 1, 1960, unless prior thereto the stock was sold, in which event trust could be terminated after the death of the wife by agreement among the surviving adult beneficiaries. *35 The stock could not be sold by the trustee without the consent of the settlor's wife and children or their survivors. The trust was to terminate as to other of its property upon the death of the settlor's wife. The majority of the adult beneficiaries had power to appoint a successor trustee. The decedent discussed the trust with his wife and children a number of times during three to five years prior to the time it was executed. He and his attorney had it under consideration for about a month. The attorney informed the decedent that if he created the trust, upon his death the Bureau of Internal Revenue might endeavor to include the value of the corpus of the trust in his gross estate for estate tax purposes upon the ground that the transfer had been made in contemplation of death, and demanded that before making the transfer he be assured that his physical condition was satisfactory. The decedent had a physical examination a short time prior thereto, but upon the insistence of his counsel had another one made. On December 31, 1935, and until December, 1939, the decedent was a director of a building and loan association, was attending to the rental of offices in the two story building *36 in which the bank was located, and was active in the management of other property, including two farms. He frequently had occasion to go up and down the stairs in the bank building. He performed his customary duties of president of the State Bank of Parsons until September, 1940. In August 1940 he sometimes did not come to the bank in the afternoon. He never took vacations. The decedent was informed in December, 1938, that he was diabetic. He took dosages of insulin for about two years before he died. Diabetes was the cause of the decedent's death. At the time of the creation of the trust the decedent's son was 37 years of age and had been assistant cashier of the bank since 1926 or 1927. The trustee at all times voted the stock at stockholders' meetings without instructions from anybody. After the stock was transferred to him, as trustee, J. J. Flynn was given greater responsibility at the bank. In their joint returns from 1936 to 1939, inclusive, the decedent and his wife returned net income of $4,059.07, $5,307.27, $3,649.79 and $5,171.16, respectively. Decedent's wife had no source of income other than as beneficiary of the trust. The value of the property transferred by the *37 decedent in trust is not includible in his gross estate for estate tax purposes as a transfer in contemplation of or intended to take effect in possession or enjoyment at or after his death or as a transfer in which he retained for his life the possession or enjoyment of, or the right to the income from, the property. Opinion The value of the bank stock transferred in trust is not in question. In his determination of the deficiency the respondent included the value of the property in the gross estate under the provisions of section 811 (c) of the Internal Revenue Code. [1] Upon brief he argues that the value of the securities is part of the decedent's gross estate for estate tax purposes under that section as a transfer made in contemplation of death; as a transfer intended to take effect in possession and enjoyment at or after death and as a transfer under which the decedent retained for his life the possession and enjoyment of, and the right to the income from, the property. *38 Did the decedent make the transfer in contemplation of death? Though the settlor was about 77 years of age at that time, age alone, under many cases, is not the criterion, though of course an element to be regarded. The test "is always to be found in motive", United States v. Wells, 283 U.S. 102, 75 L. Ed. 867, 51 S. Ct. 446; Colorado National Bank of Denver v. Commissioner, 305 U.S. 23, 83 L. Ed. 20, 59 S. Ct. 48. In Estate of Charles Delany, 1 T.C. 781, we said that "the thought of death must be the dominant and impelling motive for the trust." The evidence here is opposed to a conclusion that at the time of the transfer, the settlor believed that his death was imminent. The transfer had been the subject of discussion with members of his family for several years. During that period and thereafter until a short time before his death, the decedent was actively engaged in performing his duties as president of a bank and managing real property, all of which indicates that he was, except for his diabetic condition, not in a bad state of health. Consideration of the execution of a trust over a long period is not consistent with the idea that decedent *39 thought his death was near On the contrary, it indicates that he believed that the possibility of death in the immediate future was not a factor seriously to be considered. That the thought of death, aside from the knowledge all have that it is inevitable, was no motivating factor in the execution of the trust, is indicated by the fact that he did not execute a will until about four years later and then not until after he had been under the care of a physician for diabetes, the cause of his death, for almost two years. Cases involving trusts and wills executed at or about the same time have little bearing upon the circumstances here involved. Similarity of the provisions of the will to those in the trust are of little weight where the will is later and so far removed in time as here, and under the other circumstances as to change in physical condition. We conclude that the trust was not intended as a substitute for testamentary disposition of property. It does not appear as an instrument intended to evade estate tax, for his attorney, and not the settlor, appears first to have suggested anything in that connection, and then only that he should have a physical check-up because the *40 Bureau of Internal Revenue might construe the trust as made in contemplation of death. The decedent owned a majority of the stock of the bank and expressed a desire not only that such control be retained in his family for a long period of years, but that his son assume the management of the bank at a time when he could guide his activities. Such desires were expressed in the trust. Under its terms the trustee, decedent's son, could not sell the stock without the consent of the beneficiaries, the settlor's wife and four children, and had unrestricted power to vote the stock. The trust was to continue for 24 years, unless terminated by the children after the death of the settlor and his wife. Upon the creation of the trust, the trustee was given greater responsibilities at the bank and his father continued to serve it as president, and was in a position to advise him pursuant to his plan. The desire of the donor to have his son assume management of the bank at a time when he would be in a position to guide him in his activities, and thus acquire business experience as a stockholder, discloses a purpose associated more with life than with death, and was the compelling motive for the *41 transfer. See Percy B. Eckart, 33 B.T.A. 426; Estate of Charles Delany, supra.That the same purpose might have been accomplished without a transfer of the stock prior to death, is not conclusive. The mere purpose of making provision for the family after decedent's death is not enough to establish that the transfer was made in contemplation of death. Colorado National Bank v. Commissioner, supra. Was the transfer one intended to take effect in possession or enjoyment at or after decedent's death? The substance of respondent's argument is that the trust was testamentary in character, that the settlor did not, in fact, give up control of the property, and that the life beneficiary was in no better position, respecting the income from the property, after the transfer than she had been prior thereto, and that the compelling reason for making the trust was to avoid estate tax. He cites no case of helpful analogy. It is true that the property placed in trust was eventually to go to the natural objects of his bounty, but that fact is not controlling. Absolute gifts are frequently made to such *42 persons, yet the transfer is nevertheless subject to gift tax. Here there was an irrevocable transfer inter vivos, without a reservation of income, economic benefit or reversionary interest, leaving nothing to pass from the donor at his death. There were no restrictions upon the distribution of net income of the trust to the donor's wife or other beneficiaries, or the use thereof after its receipt. In particular, the donor's wife was under no obligation to deposit distributions in the joint bank account or use them for any designated purpose. The donor's legal liability to support his wife was not discharged by the trust. All of the donor's beneficial interest in the property passed when he created the trust. Retention by the settlor of mere right to counsel as to management and control of the stock seems not relied upon by the respondent, but in any event is of no weight in consideration of this question. There was nothing left to take effect in possession or enjoyment at or after death. Reinecke v. Northern Trust Co., supra. In Helvering v. Hallock, 309 U.S. 106, 84 L. Ed. 604, 60 S. Ct. 444, interests reserved were not terminated until the donor's death. In Helvering v. Tyler, 111 F.2d 422, *43 and Commissioner v. Wilder's Estate, 118 F.2d 281, interests in annuity contracts, consisting of principal, passed upon the death of the annuitants. Similar facts are not present here. Did the grantor retain during his life the possession or enjoyment of, or the right to, the income from the property? The crux of respondent's argument, on this point, is that as the income received by the beneficiary from the trust was deposited in the joint bank account, to which the grantor had access, and the beneficiary used the account to withdraw funds for her own benefit, the decedent, in creating the trust, parted with nothing. As already pointed out, the beneficiary was not obligated by the trust indenture to deposit distributions of income in the bank account, or use funds therein for any purpose. She received them without restrictions as to their use. In Helvering v. Mercantile-Commerce Bank & Trust Co., 111 F.2d 224, the court said that, "the words 'retained the right to the income' are used in the context to mean the opposite 'surrender the right to the income.'" Here there was a clear surrender of the right to *44 the income of the property transferred, and the incident of deposit in the joint bank account may not be given controlling effect. In Estate of Payson Stone Douglass, 2 T.C. 487; affd., 143 F.2d 961, the trustees, who did not include the trustor, the decedent, were authorized to use income of the trust for maintenance, education and support of a minor child of the trustor. We held that the property transferred was not includible in the decedent's gross estate. The facts here are more favorable to the petitioners. The respondent erred in including the value of the property in decedent's gross estate under the provisions of section 811 (c) of the Internal Revenue Code. Decision will be entered under Rule 50. Footnotes
1. Sec. 811. Gross Estate. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States - * * * * *
(c) Transfers in Contemplation of, or Taking Effect at Death. - To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, or for which he has at any time made a transfer, by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (1) the possession or enjoyment of, or the right to the income from, the property, or (2) the right, either alone or in conjunction with any person to designate the persons who shall possess or enjoy the property or the income therefrom; except in case of a bona fide sale for an adequate and full consideration in money or money's worth. * * *.↩