ESTATE OF HAROLD I. PRATT, DECEASED, UNITED STATES TRUST COMPANY OF NEW YORK AND HARRIET BARNES PRATT, EXECUTORS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 2509. Promulgated September 28, 1945.

*Will R. Gregg, Esq.*, and *Samuel E. Blackham, Esq.*, for the petitioners.

*Thomas L. Lewis, Esq.*, for the respondent.

#### OPINION.

SMITH, *Judge*: This proceeding is for the redetermination of a deficiency in estate tax in the amount of $3,393,543.99. A number of issues presented have been disposed of by a stipulation of the parties. The issues for decision are:

(1) Whether section 811 (c) of the Internal Revenue Code, in so far as it requires that there shall be included in the gross estate of the decedent the value of the corpus of an *inter vivos* trust created January 15, 1903, or any part thereof, is retroactive, void and in contravention of the Constitution of the United States where (a) the transfer to the trust was not made in contemplation of death, and (b) at the

time of the creation of the trust there was no statute imposing an estate tax.

(2) Whether the remainder in the corpus of each of the five *inter vivos* trusts, after deducting the value of the outstanding life estate in each trust, is includible in the gross estate under the provisions of section 811 (c) of the Internal Revenue Code, where (a) the transfers to the trust were not made in contemplation of death, (b) under each trust indenture no right, power, benefit, estate, or reversion was either provided for or reserved to the decedent, and (c) no part of the property of any of the trusts could revert to the decedent or his estate except by operation of law on the remote contingency that the trust might fail for want of a beneficiary.

The facts have been stipulated and, so far as applicable to the issues for decision, may be summarized as follows:

1. The decedent, Harold I. Pratt, was born on February 1, 1877. He died testate on May 21, 1939. The Federal estate tax return for his estate was filed by the petitioners, as the executors of his estate, in the office of the collector of internal revenue for the first district of New York. In said return the executors elected that the property included in the gross estate of the decedent should be valued as of the applicable optional valuation date subsequent to the date of decedent's death.

2. The age of the decedent at the time of death was 62 years. There were living at the time of the death of the decedent, and also on the applicable optional valuation date, the following:

| Name and relationship | Age at decedent's death (nearest birthday) |
|---|---|
| (a) His widow, Harriet Barnes Pratt | 60 |
| (b) Three children: | |
| Harold Irving Pratt, Jr. | 35 |
| Eleanor Pratt Hunt (Mrs. James Ramsay Hunt, Jr.) | 31 |
| Barbara Pratt Wilmerding (Mrs. David Richmond Wilmerding) | 27 |
| (c) Nine Grandchildren: | |
| Children of Harold Irving Pratt, Jr.: | |
| Harriet Barnes Pratt, 2nd | 9 |
| Margaret Hallowell Pratt | 7 |
| Ellen Hallowell Pratt, 2nd | 5 |
| Harold Irving Pratt, 3rd | 2 |
| Children of Eleanor Pratt Hunt: | |
| Barbara Hunt | 6 |
| James Ramsay Hunt, 3rd | 5 |
| William Barnes Hunt | 3 |
| Children of Barbara Pratt Wilmerding: | |
| David Richmond Wilmerding, Jr. | 4 |
| Harold Pratt Wilmerding | 2 |

In addition to the above mentioned persons, there was living on the optional valuation date, David Pratt Hunt, a grandchild of the decedent, who was born to Eleanor Pratt Hunt on August 12, 1939. Also

living at the time of the decedent's death and on the applicable optional valuation date were Ellen Hallowell Pratt, the wife of Harold Irving Pratt, Jr.; the husband of each of the decedent's daughters; two brothers of the decedent, Frederic B. Pratt, who was born on February 22, 1865, and Herbert L. Pratt, who was born on November 21, 1871, and their respective issue; a sister of the decedent, Helen F. Pratt (now Helen F. Pratt Dane), who was born on July 9, 1867, and her issue; issue of three deceased brothers of the decedent, Charles M. Pratt, George D. Pratt, and John T. Pratt; issue of a deceased sister of the decedent, Lydia R. Babbott; and numerous issue of Charles Pratt. Also, both on the date of the decedent's death and on the applicable optional valuation date there were existent Pratt Institute and Brooklyn Hospital, each of which was a corporation organized and operated solely for educational and charitable purposes. No child or grandchild of the decedent predeceased him leaving issue.

3. By indenture of trust (hereinafter referred to as trust A) executed in the State of New York under date of January 15, 1903, the decedent transferred certain property in trust for the benefit of himself and remaindermen. Under the terms of this indenture the trust term was measured by the lives of Morris Pratt and Mary Richardson Babbott (now known as and hereinafter referred to as Mary Richardson Babbott Ladd) and the survivor of them; and during said trust term the trust income, so far as here material, was to be paid as follows: To the decedent during his life; and upon the decedent's death, if issue of decedent survived him, to such of his issue as should from time to time be living, in equal shares, *per stirpes;* and, if the decedent left no issue surviving him, to such of his seven brothers and sisters as should from time to time be living and the issue of any of them that may have died leaving issue, in equal shares, *per stirpes.* Said trust indenture further provided that upon the termination of the trust term the principal of the trust was to be transferred as follows: To the decedent if then living; and, if the decedent should then be dead leaving issue then living, to such issue *per stirpes;* and, if the decedent should then be dead leaving no issue, to his brothers and sisters him surviving and the issue of any of them as should then be dead, *per stirpes.*

At the time of the decedent's death Morris Pratt, who was born November 29, 1885, was deceased, but at that time, and also on the applicable optional valuation date, Mary Richardson Babbott Ladd, who was born April 27, 1887, was living, and the trust had not terminated.

4. By indenture of trust (hereinafter referred to as trust B) executed in the State of New York under date of December 31, 1918, the decedent transferred certain property in trust for the benefit of his

wife, Harriet Barnes Pratt, and remaindermen. Under the provisions of said indenture the net income of the trust was to be paid to Harriet Barnes Pratt during her life; and upon her death the principal of the trust was to be divided into as many equal parts as there were children of the decedent and his wife who were then living and children of theirs who had died leaving issue then surviving, and one of said parts was to be set aside for each such living child and one of said parts for the issue taken collectively of each such deceased child. As to each part set aside for the benefit of a child living at the time of the execution of the indenture, the trustee was to continue to hold the same in trust and to pay the net income to such child until he or she attained the age of thirty-five years, and then to pay over to such child one-quarter of the principal, and thereafter to hold the remaining three-quarters of the principal in trust and pay the net income to such child until he or she attained the age of forty years, and then to pay over to such child another one-quarter of the principal, and thereafter to hold the remaining half of the principal in trust and pay the net income to such child until he or she attained the age of forty-five years, and then to pay over to such child the balance of the principal; and if any such child died subsequent to the death of Harriet Barnes Pratt but before attaining the age of forty-five years, the part of the principal of the trust fund then held in trust for such child was to be transferred as he or she should by will appoint, and in default of such appointment to such child's surviving issue *per stirpes*, and if he or she left no issue to the issue then living of the decedent and Harriet Barnes Pratt *per stirpes*, and if there were no issue of the decedent and Harriet Barnes Pratt then living, in equal parts to Pratt Institute and Brooklyn Hospital. As to each part set aside for the benefit of a child born after the time of the execution of the indenture or for the benefit of the issue of a deceased child, the same was to be transferred absolutely to such child or to such issue *per stirpes*.

5. By indenture of trust (hereinafter referred to as trust C) executed in the State of New York under date of December 24. 1920, the decedent transferred certain property in trust for the benefit of his wife, Harriet Barnes Pratt, and remaindermen. Under the provisions of said indenture the net income of the trust was to be paid to Harriet Barnes Pratt during her life; and upon her death, in case the trust had not then terminated in the manner hereinafter described, the principal of the trust was to be transferred to such living children of the decedent and the issue then living of such deceased children of the decedent and in such estates, interests, and proportions as Harriet Barnes Pratt should by will appoint; and in default of such appointment the principal of the trust was to be divided into as many equal parts as there were children of the decedent who were then living and

children who had died leaving issue then living, and one of said parts was to be set aside for the benefit of each such living child and one of said parts for the living issue taken collectively of each such deceased child. As to each part set aside for a child born after the date of the execution of the indenture or for the issue of a deceased child, the same was to be transferred absolutely to such child or to such issue *per stirpes*. As to each part set aside for a child in being at the date of the execution of the indenture and living at the death of Harriet Barnes Pratt, the trustees were to continue to hold the same in trust and pay the net income to the use of such child during his life; and upon his death the trustees were to transfer said part to such of the wife or husband and issue of such child and in such estates, interests, and proportions as such child should by will appoint, and, in default of such appointment, to his or her surviving issue *per stirpes*, and, in default of such issue, to the then living descendants of the decedent *per stirpes*, and, in default of such descendants, to the then living descendants of Charles Pratt *per stirpes*. The indenture further provided that, if at any time prior to the termination of the trusts thus created the trustees should in their absolute discretion unanimously determine that it was for the best interest of the beneficiary or beneficiaries thereof that the trusts be terminated in whole or in part and such determination should be approved by Harriet Barnes Pratt if living, the trustees could terminate the trusts accordingly and transfer the applicable portion of the principal of the trust to the person or persons who should at that time be entitled to the income therefrom.

6. By indenture of trust (hereinafter referred to as trust **D**) executed in the State of New York under date of May 11, 1931, the decedent transferred certain property in trust for the benefit of his daughter, Eleanor Pratt (now known as Eleanor Pratt Hunt), and remaindermen; and in the years 1931 and 1933 he transferred additional property to said trust  Under the provisions of said indenture the net income of the trust was to be paid to Eleanor Pratt until she should attain the age of thirty-five years, or sooner die, and upon her attaining the age of thirty-five years the principal of the trust was to be transferred to her; or, if she should die before attaining the age of thirty-five years, then upon her death the principal of the trust was to be transferred to such of her issue or her surviving husband in such shares, interests, and proportions as she should by will appoint, and in default of such appointment in equal shares to her surviving issue *per stirpes;* or, if she should die before attaining the age of thirty-five years without having exercised such power of appointment and without leaving issue, the principal of the trust was to be transferred in equal shares to her sister and brother, Barbara Pratt (now Barbara Pratt Wilmerding) and Harold Irving Pratt, Jr.; and if either of said

persons should have died leaving issue then living, his or her part was to be transferred in equal shares to such issue, *per stirpes;* and if either of said persons should have died without leaving issue then living, his or her part was to be transferred to the survivor. The indenture further provided that, if at any time prior to the thirty-fifth birthday of Eleanor Pratt and during the continuance of the trust the trustees should in their absolute discretion deem the termination of the trust advisable or desirable, they could by unanimous action terminate the trust and transfer the principal to Eleanor Pratt absolutely.

7. A trust similar to that described in the next preceding paragraph and containing provisions similar thereto, with appropriate substitutions of names, was executed by the decedent on May 11, 1931, for the benefit of his daughter, Barbara Pratt (now known as Barbara Pratt Wilmerding), and remaindermen. In the years 1931 and 1933 the decedent transferred additional property to said trust. This trust is hereinafter referred to as trust **E**.

8. By indenture of trust (hereinafter referred to as trust **F**) executed in the State of New York under date of April 29, 1932, the decedent transferred certain property in trust for the benefit of Ellen Hallowell Pratt, wife of his son Harold Irving Pratt, Jr., and remaindermen. In the year 1933 he transferred additional property to said trust. Under the provisions of the indenture the net income of the trust was to be paid to Ellen Hallowell Pratt during her life; and upon her death the principal of the trust was to be transferred to such of the issue of her and her husband in such shares, interests, and proportions as she should by will appoint, and, in default of such appointment, in equal shares to the issue of her and her said husband her surviving, *per stirpes;* or, if she should die without having exercised such power of appointment and without leaving issue, the principal of the trust was to be transferred to her husband, Harold Irving Pratt, Jr., and, if he were not then living, in equal shares to his sisters, Eleanor Pratt Hunt and Barbara Pratt (now Barbara Pratt Wilmerding) ; and if either of such persons should have died leaving issue then living, her part was to be transferred in equal shares to such issue, *per stirpes;* and if either of said persons should have died without leaving issue then living, her part was to be transferred to the survivor. The indenture further provided that, if at any time prior to the expiration of the trust the trustees should in their absolute discretion deem the termination of the trust advisable or desirable, they could by unanimous action terminate the trust and transfer the principal to Ellen Hallowell Pratt absolutely.

9. All of the trusts were in existence at the time of the decedent's death. Under none of the indentures, except trust A, was any right,

power, interest, or estate created for or reserved to the grantor; and under none, except trust A, was provision made for reversion to the grantor or his estate of any property of the trust.

We consider first petitioners' contention with respect to trust A, the corpus of which was included by the respondent in the gross estate. Under this trust the grantor retained a life income and provided that if both Morris Pratt and Mary Richardson Babbott should predecease him the principal of the trust was to revert to him. The trust corpus is not to be included in the gross estate by reason of the fact that the grantor reserved a life income in the trust property; for the transfer to trust was prior to the amendments made to section 811 (c) of the Internal Revenue Code by Joint Resolution of Congress of March 3, 1941. See *Hassett* v. *Welch*, 303 U. S. 303. We therefore have to consider only whether the principal of trust A is to be included in the gross estate by reason of a possibility of reverter of the trust principal to the grantor.

The petitioners concede that under the decisions of the Supreme Court in *Helvering* v. *Hallock*, 309 U. S. 106; *Fidelity-Philadelphia Trust Co. (Stinson Estate)* v. *Rothensies*, 324 U. S. 108; and *Commissioner* v. *Field*, 324 U. S. 113, the transfer by the decedent to trust A was a transfer intended to take effect in possession or enjoyment at or after death, and that the corpus of the trust would be includible in the gross estate if the trust had been created and the corpus transferred to the trustees subsequent to September 8, 1916, the date of the approval of the Revenue Act of 1916, which first imposed an estate tax. It is their contention, however, that the corpus of trust A is not to be included in the gross estate under the rule of *Nichols* v. *Coolidge*, 274 U. S. 531, which is to the effect that the transfer by a decedent prior to the incidence of the estate tax on September 8, 1916, may not be included in the gross estate "merely because the conveyance was intended to take effect in possession or enjoyment at or after his death" under section 402 (c) of the Revenue Act of 1918, the forerunner of section 811 (c) of the Internal Revenue Code, which, so far as material, provides:

(c) TRANSFERS IN CONTEMPLATION OF, OR TAKING EFFECT AT DEATH.—To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, or of which he has at any time made a transfer, by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (1) the possession or enjoyment of, or the right to the income from, the property, or (2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom ; except in case of a bona fide sale for an adequate and full consideration in money or money's worth. * * *

The transfers to trust involved in *Helvering* v. *Hallock, supra*, were made before death and subsequent to 1916. Because of their testamentary nature they were brought within the ambit of the estate tax upon the death of the settlor. Mr. Justice Frankfurter used the following language in his opinion in the *Hallock* case:

> Whether the transfer made by the decedent in his lifetime is "intended to take effect in possession or enjoyment at or after his death" by reason of that which he retained, is the crux of the problem. We must put to one side questions that arise under sections of the estate tax law other than § 302 (c)—sections, that is, relating to transfers taking place at death. Section 302 (c) deals with property not technically passing at death but with interests theretofore created. The taxable event is a transfer *inter vivos*. But the measure of the tax is the value of the transferred property at the time when death brings it into enjoyment.

In the *Hallock* case the Supreme Court held that each of the transfers made in 1919, 1925, and 1917 was a "taxable event" which called for the imposition of the tax at the time of death.

In *Milliken* v. *United States*, 283 U. S. 15, which upheld the higher rates of the 1918 tax when applied to gifts in contemplation of death while the 1916 Act was in force, the Court said:

> This Court has held the taxation of gifts made, and completely vested beyond recall, before the passage of any statute taxing them, to be so palpably arbitrary and unreasonable as to infringe the due process clause. *Nichols* v. *Coolidge, supra; Untermyer* v. *Anderson*, 276 U. S. 440; *Coolidge* v. *Long*, 282 U. S. 582. In *Nichols* v. *Coolidge* it was held that § 402 of the 1918 Act could not constitutionally be applied to a gift *inter vivos*, not in contemplation of death, and made long before the adoption of any congressional legislation imposing an estate tax or taxing gifts to take effect in possession or enjoyment at or after death. In *Untermyer* v. *Anderson, supra*, it was held that the retroactive provision of the novel gift tax of the Revenue Act of 1924 was invalid as applied to gifts antedating the Act. In both the point was stressed, as the basis of decision, that the nature and amount of the tax burden imposed could not have been understood and foreseen by the taxpayer at the time of the particular voluntary act which was made the occasion of the tax. See *Nichols* v. *Coolidge, supra*, p. 542; *Untermyer* v. *Anderson, supra*, p. 445. Upon similar grounds, in *Coolidge* v. *Long, supra*, a state tax on successions was held invalid as applied to the gift to the donor's children involved in *Nichols* v. *Coolidge, supra*, because deemed to be a tax on a succession to a gift completely vested before the enactment of the taxing act or of any other law taxing successions by lineal descendants of the donor.

The petitioners recognized that the Circuit Court of Appeals for the Second Circuit has held contrary to their contention, upon facts which can not be distinguished from those involved herein with respect to trust A, in *Commissioner* v. *Flanders*, 111 Fed. (2d) 117. In that case the court used the following language:

> * * * It is urged that the *Hallock* case involved a trust created after the estate tax law was enacted; and that to apply the statute retroactively to Trust No. 4 would be unconstitutional, as shown by *Nichols* v. *Coolidge, supra*. However, in the *Coolidge* case the settlor's death determined his life estate but did not take from him an interest in the corpus or augment the estate created in the

remaindermen by the trust deed. In the case at bar, the remaindermen would have taken nothing had the settlor survived the term of the trust; his death was the event that destroyed his possibility of reverter and brought into being remainders of which they had full dominion. Such shifting of economic benefit renders the corpus of the trust taxable under the latest utterance of the Supreme Court.

They contend, however, that that case was wrongly decided and submit:

\* \* \* It [the court] clearly confused section 811 (c) with section 811 (a) and overlooked the significant statement made by the Supreme Court in the *Hallock* case and reemphasized by it in the *Stinson* case that as regards a transfer intended to take effect at or after death and taxable under section 811 (c) the "taxable event" is the "transfer *inter vivos.*" The position of the petitioners is that the *Flanders* case is so clearly contrary to *Nichols* v. *Coolidge*, that the Second Circuit should be given an opportunity to reconsider the question.

In *Mabel Shaw Birkbeck Estate*, 47 B. T. A. 803, the decedent had created an irrevocable trust in 1903, reserving a life interest. She also retained a power to appoint the remainder by will in the event her daughter died without issue. The decedent died in 1939. We held that section 811 (c) of the Internal Revenue Code could not be applied to the transfer in trust, which took place prior to the enactment of the first Federal estate tax statute, citing in support thereof *Nichols* v. *Coolidge, supra*, saying:

\* \* \* Thus it can not be said here, as in *Commissioner* v. *Flanders*, 111 Fed. (2d) 117, that decedent's death destroyed a possibility of reverter or brought into being remainders over which the issue had full dominion. \* \* \*

Since that case was decided the Supreme Court has rendered opinions in *Fidelity-Philadelphia Trust Co.* v. *Rothensies, supra; Commissioner*, v. *Field, supra;* and *Goldstone* v. *United States*, 325 U. S. 687. All of those cases give support to the conclusion reached by the Circuit Court of Appeals for the Second Circuit in *Commissioner* v. *Flanders, supra.*

We are furthermore of the opinion that this case is not within the ambit of *Nichols* v. *Coolidge, supra;* for the grant in that case was complete and absolute as of the date of transfer. In the instant proceeding the decedent had an interest in the transferred property represented by trust A consisting of a possibility of reverter up to the date of his death. The corpus was to go to some one other than the decedent upon the termination of the trust only if he were dead upon such termination. The possibility of reverter was cut off by his death. The case is squarely within the rule of *Klein* v. *United States*, 283 U. S. 231.

We think that the respondent did not err in including the value of the assets of trust A in the gross estate of decedent.

The petitioners make the further contention that to construe the law as contended for by the respondent herein would be violative of

the Fifth Amendment to the Constitution, again relying on *Nichols* v. *Coolidge, supra.* We are of the opinion, however, for reasons stated by the court in *Commissioner* v. *Flanders, supra,* that there is no merit in this contention.

The second question presented is whether the corpora of the five trusts created by the decedent during the years 1918 to 1932, inclusive, are includible in the gross estate. The respondent contends that they are, by reason of the fact that if all of the beneficiaries and remaindermen of those trusts had died prior to the death of the decedent the trust corpora might have reverted to the decedent by operation of law.

The parties have stipulated that the trusts were not created in contemplation of death and the facts show that the trust instruments reserved to the grantor no right to revoke, alter, or amend the trusts. The transfers from the grantor to the trustees were absolute as of the date of the creation of the trusts. Thereafter he had no right, title or interest to either the income or any part of the principal of the trusts.

This Court and other courts have many times held that in such trusts no part of the transferred property is to be included in a decedent's gross estate. *Estate of Edward Lathrop Ballard,* 47 B. T. A. 784; affd., 138 Fed. (2d) 512; *Estate of Edward E. Bradley,* 1 T. C. 518; affd. (C. C. A., 2d Cir.), sub nom. *Helvering* v. *Washington Trust Co.,* 140 Fed. (2d) 87; *Estate of Charles Delany,* 1 T. C. 781; *Estate of Lester Hofheimer,* 2 T. C. 773; *Estate of Mabel H. Houghton,* 2 T. C. 871; *Estate of Ellen Portia Conger Goodyear,* 2 T. C. 885; *Estate of Henry S. Downe,* 2 T. C. 967; *Estate of Joseph K. Cass,* 3 T. C. 562; *Estate of Sallie Houston Henry,* 4 T. C. 423; *Commissioner* v. *Kellogg* (C. C. A., 3d Cir.), 119 Fed. (2d) 54; *Lloyd's Estate* v. *Commissioner* (C. C. A., 3d Cir.), 141 Fed. (2d) 758; *Commissioner* v. *Lasker's Estate* (C. C. A., 7th Cir.), 141 Fed. (2d) 889; *Commissioner* v. *Irving Trust Co.* (C. C. A., 2d Cir.), 147 Fed. (2d) 946; *Estate of Harris Fahnestock,* 4 T. C. 1096. We have been able to find no decisions to the contrary.

We see no reason to depart from the position which this Court and other courts have taken with respect to this issue. The action of the respondent in including the corpora of the five trusts in question in the gross estate of the decedent is reversed.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

––––––

ARUNDELL, *J.*, dissenting: The fundamental issue here is whether the value of trust A, which was created approximately thirteen years prior to the passage of the first estate tax provision, is to be included

in the decedent's gross estate merely because that trust, when created, was intended to take effect in possession or enjoyment at or after his death. The question is not whether the possibility of reverter to decedent, in the event he survived the measuring lives, brings the trust within the statute as a transfer intended to take effect in possession or enjoyment at or after his death, for the petitioner concedes that if the trust had been created subsequent to the enactment of the estate tax provisions in 1916, it would be includible under *Helvering* v. *Hallock*, 309 U. S. 106.

With respect to the first question above set forth, and which is the issue here, the Supreme Court in *Nichols* v. *Coolidge*, 274 U. S. 531, held that substantially the same statutory provision as is here in question could not operate to include in the gross estate the value of property transferred by decedent prior to its passage merely because the conveyance was intended to take effect in possession or enjoyment at or after his death. That decision was reaffirmed in *Helvering* v. *Helmholz*, 296 U. S. 93 (1935). There were two grounds for the decision in that case, and it may be pointed out that only on the ground of retroactivity did Justices Brandeis, Stone, and Cardozo concur to make an unanimous decision on that point. In *Blodgett* v. *Holden*, 275 U. S. 142, and *Untermyer* v. *Anderson*, 276 U. S. 440, the Supreme Court likewise held that the Gift Tax Act of 1924, in so far as it attempted to tax gifts made prior to the passage of that act, offended the Fifth Amendment, and a retroactive application of the act was said to be arbitrary and capricious.

The views expressed by the Court in *Helvering* v. *Hallock, supra,* and *Fidelity-Philadelphia Trust Co.* v. *Rothensies*, 324 U. S. 108, do not appear to me to be out of harmony with *Nichols* v. *Coolidge, supra,* and similar cases. In these recent cases the Court expressly pointed out that the taxable event is a transfer *inter vivos*, but that the measure of the tax is the value of the transferred property at the time when death brings it into enjoyment. There the Court was concerned with trusts which had been created subsequent to the enactment of the estate tax provisions and which were within the scope of the statute if the particular transfers when made were intended to take effect in possession or enjoyment at or after the death of the respective donors. As previously indicated, the problem in the instant case is whether this transfer, made prior to the enactment of the first estate tax act, is to be included merely because it was intended to take effect in possession or enjoyment at or after death. This question was not before the Supreme Court in either the *Hallock* or the *Stinson* case, nor was the question decided therein.

In every fundamental respect the situation in the instant case is indistinguishable from that in the *Coolidge* case. Here the decedent

retained the income for his life and he had a possibility of reverter if he survived the two measuring lives upon which the term of the trust rested. The majority report concedes that nothing is to be included by reason of the retention of the life estate. *May* v. *Heiner*, 281 U. S. 238. Hence, there remains only the possibility of reverter to bring the transfer within the statute. The decedent retained no power to alter, amend, or revoke the transfer. The transfer was absolute and its term was measured not by the death of the decedent, but by the lives of others. Likewise, in *Coolidge*, the grantor had only a possibility of reverter.

As pointed out in the majority report, the decision as to trust No. 4 in *Commissioner* v. *Flanders*, 111 Fed. (2d) 117, is contrary to the view herein expressed. It is with some trepidation that I express disagreement with that decision, which was handed down by the Circuit Court of Appeals for the Second Circuit. However, it seems to me that we should follow the express pronouncement of the Supreme Court in *Nichols* v. *Coolidge*, *supra*, until such time as that Court in plain language overrules the *Coolidge* case, or at least casts substantial doubt on it. That was the view I took in *Mabel Shaw Birkbeck Estate*, 47 B. T. A. 803, where the identical issue here present was considered.

I respectfully dissent from the conclusion of the majority that the value of trust A is includible in decedent's gross estate under section 811 (c).

MURDOCK, BLACK, LEECH, TYSON, and HARRON, *JJ.*, agree with this dissent.